UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward Leo FITZHERBERT,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Dean Todd FITZHERBERT,
Defendant–Appellant.

Nos. 93–3087, 93–3016.

United States Court of Appeals,
Tenth Circuit.

Dec. 22, 1993.

Marilyn M. Trubey, Branch Chief, Federal Public Defender's Office, Topeka, KS (Charles D. Anderson, Federal Public Defender, Topeka, KS, with her on the brief), for defendant-appellant Edward Leo Fitzherbert.

David C. Voss, Topeka, KS, for defendant-appellant Dean Todd Fitzherbert.

Gregory Hough, Asst. U.S. Atty., Topeka, KS (Jackie N. Williams, U.S. Atty., Thomas G. Luedke, Asst. U.S. Atty., Topeka, KS, with him on the briefs), for plaintiff-appellee.

Before: LOGAN, FEINBERG * and McWILLIAMS, Circuit Judges.

FEINBERG, Senior Circuit Judge:

Appellants Edward Leo Fitzherbert (Edward) and Dean Todd Fitzherbert (Dean) appeal from convictions entered in the United States District Court for the District of Kansas, Richard D. Rogers, J., for drug-related offenses, all stemming from an indoor marijuana growing operation conducted in Kansas from December 1991 to May 1992. Edward is Dean's father and the lessee of the house in which the operation was conducted. Both Edward and Dean argue that the district court erred in allowing into evidence a videotape documenting a similar indoor marijuana growing operation in Maine in late 1990. In addition, both appellants raise sentencing issues: Edward claims that the district court erred in denying him a downward departure for substantial assistance to the government, and Dean claims

---

* The Honorable Wilfred Feinberg, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

that the district court should not have applied a two-level enhancement for obstruction of justice. For the reasons given below, we affirm in all respects.

## I. Background

### A. Discovery of the growing operation

In December 1991, appellants Edward and Dean, Edward's wife Christina, Dean's two adolescent brothers named Chad and Paul, and four small children moved from the state of Maine to Lyndon, Kansas. Lyndon is a small town with a population of approximately 900. The family attracted some attention in the community because it appeared to have plenty of money even though no family member seemed to have a job. The family attracted further attention because of a February 1992 conversation between Edward and Lyndon Police Chief Ryan Patrick Smith, during which Edward expressed unusual interest in the procedures of the Lyndon Police Department. Chief Smith became suspicious and decided to contact other law enforcement authorities. As a result, Chief Smith learned that a county drug enforcement unit was interested in a suspect who fit Edward's physical description. This led to several investigations of the Fitzherberts' trash, which produced evidence of drug-related activities and provided sufficient basis to obtain a search warrant.

In early May 1992, a search of the Fitzherbert residence was jointly executed by the Kansas Bureau of Investigation, the local county sheriff's department and the Lyndon police. This search yielded approximately 190 marijuana plants growing indoors, marijuana seeds in various stages of germination, a variety of marijuana-related paraphernalia and several firearms. The search also uncovered several photographs of the defendants in the presence of marijuana and a videotape taken in the Fitzherberts' prior residence in Maine. The videotape documented a substantial indoor marijuana growing operation at that residence.

### B. Proceedings in the district court

In July 1992, a grand jury indicted both Fitzherberts, charging Edward in six counts and Dean in two counts with various drug-related offenses. A few months later, both Fitzherberts moved in limine to exclude the Maine videotape from evidence. The judge denied the motion. In November 1992, pursuant to a plea agreement, Edward pleaded guilty to one count of conspiracy to manufacture with intent to distribute approximately 190 marijuana plants in violation of 21 U.S.C. § 846 and one count of possession of a firearm during a drug-trafficking offense in violation of 18 U.S.C. § 924(c). Under the plea bargain, the government agreed to dismiss the remaining four counts of the indictment, and to make a motion for downward departure pursuant to U.S.S.G. § 5K1.1 if Edward provided useful information relating to other offenders. Edward reserved the right to appeal from the district court's denial of his motion to exclude the videotape.

Dean's case proceeded to trial, and in late October 1992 he was convicted by a jury of one count of conspiracy to manufacture with intent to distribute approximately 190 marijuana plants in violation of 21 U.S.C. § 846 and one count of manufacturing with intent to distribute approximately 190 marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

In January 1993, Dean received a sentence of 97 months on each count, to be served concurrently. In the course of sentencing Dean, the district judge imposed a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. In February, despite the government's motion for a downward departure, Edward received a sentence within the guideline range; the judge imposed prison terms of 63 months for the conspiracy count and 60 months for the gun count, to run consecutively.

## II. Discussion

In this court, both appellants argue that their convictions should be reversed because the district court erred in not excluding the Maine videotape. Also, Edward argues that the district court should have given him a downward departure after the government kept its part of the plea bargain by making a § 5K1.1 motion, and Dean contends that the district court erred in enhancing his sentence

solely because it found that Dean had committed perjury at trial.

## A. Fed.R.Evid. 404(b)—The Videotape

■ Pursuant to Fed.R.Evid. 404(b), the district court admitted into evidence the videotape of the indoor marijuana growing operation conducted in Maine. Rule 404(b) provides, in relevant part:

> **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident ...

We review the district court's decision to admit evidence of prior acts under Rule 404(b) for abuse of discretion. *United States v. Poole,* 929 F.2d 1476, 1479 (10th Cir.1991); *United States v. Record,* 873 F.2d 1363, 1373 (10th Cir.1989).

■ Dean argues that the videotape was improperly admitted because it was never established that he had participated in the Maine growing operation. According to Dean, the videotape does not actually show him in the growing room or participating in the planting, growing, or harvesting of the marijuana. Further, Dean testified that he did not live in the house during the Maine growing operation, although he did visit and was aware of it. Thus, Dean argues that "the government should have been made to show the defendant not only had knowledge that an operation was underway, but that he was an active participant."

In *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court set forth the criteria for admission of prior act evidence. In accordance with *Huddleston,* this Circuit has established the following four requirements for admission of evidence under Rule 404(b):

(1) the evidence must be offered for a proper purpose;

(2) the evidence must be relevant;

(3) the trial court must make a rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and

(4) pursuant to Fed.R.Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Poole,* 929 F.2d at 1481 (quoting *United States v. Jefferson,* 925 F.2d 1242, 1258 (10th Cir.), cert. denied, — U.S. —, —, 112 S.Ct. 238, 239, 116 L.Ed.2d 194 (1991)). *United States v. Record,* 873 F.2d at 1374–75. See also *Huddleston,* 485 U.S. at 691–92, 108 S.Ct. at 1502. This court has "described the parameters of Rule 404(b) admission in an inclusive sense holding that 'it would allow admission of uncharged illegal acts unless the only purpose for their admission is to prove the criminal disposition of the defendant.'" *United States v. Record,* 873 F.2d at 1373 (quoting *United States v. Nolan,* 551 F.2d 266, 271 (10th Cir.), cert. denied, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977)).

■ The record shows that these requirements were satisfied with respect to the videotape. First, the government offered the videotape for the proper purpose of showing knowledge, intent, and the presence of a common scheme or plan. Second, the jury (which saw Dean testify) could reasonably conclude from the totality of the evidence—including a still photograph of Dean in the Maine house with a large amount of marijuana and the presence on the videotape of a man who may have been Dean—that Dean was a participant in the Maine growing operation. Thus, the evidence was relevant. Third, while the district court did not expressly find that the videotape's probative value outweighed any unfair prejudice, the issue was argued before the court, and we are satisfied that "[b]y denying the motion to exclude the evidence, the court, in essence, rejected the defendant's prejudice argument." *United States v. Fingado,* 934 F.2d 1163, 1166 (10th Cir.), cert. denied, — U.S. —, 112 S.Ct. 320, 116 L.Ed.2d 262 (1991). Finally, the district court instructed the jury without objection on the limited purposes for which the videotape was introduced.

With regard to Edward, the argument for admitting the videotape was even stronger, since it was conceded that he was pictured in it. Edward also contends that the district court erred in admitting the videotape because the government failed to articulate the theory upon which the evidence was offered, as required by *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir.1985), cert. denied, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986). The argument is without merit. We are satisfied that the government established a proper purpose for the evidence, and that there was no abuse of discretion under *Huddleston*.

### B. U.S.S.G. § 5K1.1

■ Edward Fitzherbert argues that the district court misapplied section 5K1.1 of the Sentencing Guidelines in denying a downward departure for providing substantial assistance to the government, the government having made the requisite motion pursuant to the plea bargain. Appellant argues that the district court failed to consider the circumstances of his assistance, including its significance, the truthfulness of the information and the danger to Edward resulting from the cooperation. This failure to consider, according to appellant, was not an exercise of discretion but rather was a misapplication of § 5K1.1.

It is settled law in this Circuit that this Court lacks jurisdiction to review a district court's discretionary refusal to grant a downward departure, including a refusal after a government motion pursuant to § 5K1.1. *United States v. McHenry*, 968 F.2d 1047, 1048 (10th Cir.1992); *United States v. Munoz*, 946 F.2d 729, 730 (10th Cir.1991). We reject appellant's attempt to evade this jurisdictional bar by characterizing the district court's refusal to depart as a misapplication of the guidelines rather than an as exercise of discretion. Citing *Munoz*, the district court noted its considerable discretion and stated that, in light of all of the factors in the case including the assistance, "the sentencing guidelines fit this case rather accurately." Therefore, having already rejected the probation officer's suggestion for an upward departure, the district court refused to depart downward, and imposed instead a sentence within the guidelines. The district court clearly exercised its discretion in refusing to make a downward departure, and we lack jurisdiction to review this decision.

### C. U.S.S.G. § 3C1.1

■ Dean Fitzherbert argues that the district court improperly enhanced his base offense level by two levels for obstruction of justice, pursuant to § 3C1.1 of the Sentencing Guidelines, on the basis of the court's finding that Dean committed perjury. Citing *United States v. Colletti*, 984 F.2d 1339 (3d Cir.1992), Dean claims that this was error because there was no showing that the alleged perjury actually obstructed or interfered with the administration of justice by putting the government to more proof than would otherwise have been necessary.

■ We review the district court's finding of perjury in this context under the clearly erroneous standard. *United States v. Litchfield*, 959 F.2d 1514, 1523 (10th Cir.1992); *United States v. McCann*, 940 F.2d 1352, 1360 (10th Cir.1991). The issue whether perjury without more justified a sentence enhancement is a question of law, to be considered de novo.

Unlike the Third Circuit in *Colletti*, this Circuit has upheld enhancement for obstruction of justice based solely on perjury. *United States v. Beaulieu*, 900 F.2d 1537 (10th Cir.), cert. denied, 497 U.S. 1009, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990). Moreover, in *United States v. Dunnigan*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court appears to have rejected the approach taken in *Colletti*. In *Dunnigan*, the Court held that a district court may enhance a sentence for obstruction of justice under § 3C1.1 because of the defendant's perjury at trial. The Court noted that the commentary to § 3C1.1 expressly includes perjury as an example of conduct that may justify enhancement. *Id.* —— U.S. at ——, 113 S.Ct. at 1115–16 (citing U.S.S.G. § 3C1.1, Application Note 3(b)). The Court acknowledged the existence of a line of cases that "do not interpret perjury to constitute an obstruction of justice unless the perjury is part of some greater design to interfere with judi-

cial proceedings," *id.,* —— U.S. at ——, 113 S.Ct. at 1116 (citing *In re Michael,* 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945); *Ex parte Hudgings,* 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656 (1919)). The Court, however, distinguished these cases as restrictive applications of the contempt power, noting that in the context of § 3C1.1 "the enhancement provision is part of a sentencing scheme designed to determine the appropriate type and extent of punishment after the issue of guilt has been resolved." *Id.*

The Court also rejected the argument that § 3C1.1 burdens the right to testify, noting that the "right to testify does not include a right to commit perjury," *id.,* —— U.S. at ——, 113 S.Ct. at 1117 (citing *Nix v. Whiteside,* 475 U.S. 157, 173, 106 S.Ct. 988, 997, 89 L.Ed.2d 123 (1986); *United States v. Havens,* 446 U.S. 620, 626, 100 S.Ct. 1912, 1915, 64 L.Ed.2d 559 (1980); *United States v. Grayson,* 438 U.S. 41, 54, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978)), and that the risk that the enhancement will apply every time a defendant testifies and is subsequently convicted is dispelled by the requirement that the district court make specific findings to support all of the elements of a perjury violation. *Id.,* —— U.S. at ——, 113 S.Ct. at 1117–18; see also *United States v. Garcia,* 994 F.2d 1499, 1509 (10th Cir.1993).

We believe that the district judge made sufficient findings to support the enhancement. Dean made conflicting statements to law enforcement personnel before he "settled on" the position that he and his brother Chad were jointly responsible for the marijuana growing operation. Dean then testified at trial that Chad was solely responsible, contradicting the testimony of the investigating officers and the weight of the evidence. The district judge found that this testimony reflected a strategy to place the blame for the operation on a family member who was charged as a juvenile and would therefore suffer the least penalty. It is true that the district judge said that there was "no showing" that the government was put to an additional burden because of Dean's perjurious testimony. The judge, however, was "disturbed by the effort of defendant and his family to place the blame for growing 190

marijuana plants upon a juvenile, apparently upon the belief that he had the least to lose." We see no persuasive reason to disturb the judge's conclusion that this constituted an obstruction of justice.

Accordingly, the judgments of conviction are affirmed in all respects.