

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-1998

# United States v. Russell

Precedential or Non-Precedential:

Docket 96-7760

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation
"United States v. Russell" (1998). *1998 Decisions*. Paper 13.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/13

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 16, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7760

UNITED STATES OF AMERICA

v.

JAMES RUSSELL, aka GAITH JUNIOR DOUGLAS,
aka STEVEN SHAWN JONES

JAMES RUSSELL, a/k/a Steven Shawn Jones,

      Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 94-cr-00314-1)

ARGUED AUGUST 11, 1997

BEFORE: ALITO, LEWIS and McKEE, Circuit Judges.

(Filed January 16, 1998)

      Michael J. Zicolello (ARGUED)
      Schemery & Zicolello
      330 Pine Street
      One Executive Plaza, Suite 201
      Williamsport, PA 17701

      Attorney for Appellant

George J. Rocktashel (ARGUED)
Office of United States Attorney
240 West Third Street
P.O. Box 548
Williamsport, PA 17703

   Attorney for Appellee

OPINION OF THE COURT

LEWIS, Circuit Judge.

James Russell was convicted of conspiracy to distribute
controlled substances in violation of 21 U.S.C. S 846, and
conducting a continuing criminal enterprise (CCE) in
violation of 21 U.S.C. S 848. He was sentenced to two
concurrent life terms.

Russell's appeal presents a number of challenges to his
convictions, the primary one being that the district court
failed to instruct the jury properly on the CCE count. We
will discuss each of Russell's challenges in turn, focusing in
more detail on his claim that the CCE instruction deprived
him of his Sixth Amendment right to a unanimous jury
verdict.

We will conclude that the jury instruction on the CCE
count was erroneous and was not harmless error.
Accordingly, we will reverse Russell's conviction under the
CCE statute. We will affirm his convictions on all other
counts.

I.

A. Facts

Russell and four others were charged with conducting a
continuing criminal enterprise (Count I), conspiracy to
distribute controlled substances (Count II), and money
laundering (Count III). The indictment also sought the
forfeiture of property and assets obtained with proceeds of
drug sales, pursuant to 21 U.S.C. S 853(p). App. at 53.
Three of Russell's co-defendants, Mark Smith, Richard

Francis Robinson and Arthur Lester Raymond, pleaded guilty to the conspiracy charge and testified against Russell at trial.

Russell's trial commenced in June 1995 and lasted approximately six weeks. The testimony outlined a complex and lucrative scheme, organized by Russell, to distribute drugs in Pennsylvania, initially in Philadelphia and later in Williamsport. Essentially, Russell, Robinson, Smith and Raymond pooled their funds to make large purchases of cocaine base and cocaine powder from suppliers in New York. The drugs were repackaged and distributed to sellers in Pennsylvania, and then sold on the street in $10 or $20 bags.

In addition to conducting his own distribution network in Williamsport, Russell also supplied cocaine to other distributors operating networks there. Specifically, Russell developed a business relationship with one David Williams. Russell would supply Williams with cocaine, which Williams would then sell from a location known as the "pink house." Over time, Williams permitted Russell to sell cocaine directly out of the "pink house." Russell's co-conspirators were not permitted to sell drugs out of this location.

B. Weapons Use

Testimony at trial also revealed that between 1990 and 1994, Russell had his girlfriend, Melita Garcia, purchase a number of guns for him. Garcia testified that she purchased the weapons with cash given to her by Russell. Although there was no testimony relating to Russell's specific use of the guns during particular drug transactions, the government introduced evidence, over Russell's objection, pertaining to Russell's arrest in 1991 in Maple Shade, New Jersey. At the time of the arrest, Russell was traveling with Mark Smith from New York where they had purchased cocaine from one of Russell's sources. When the car was stopped, the police discovered a gun in the trunk, together with 473 grams of cocaine and packaging material. Russell pleaded guilty to the gun charge and was released for time served.

Another witness, Andre Grimes, testified that in another incident relating to the drug operation, Russell used a knife

3

to assault George Felder. Grimes testified that in October 1994, he and Russell assaulted Felder because Felder had allegedly stolen approximately $400 to $500 in drug proceeds belonging to Russell. App. at 383-85. Grimes explained that when he and Russell approached Felder about the stolen money, Felder had a knife. App. at 385. Grimes testified that he felt threatened, picked up a bat and started hitting Felder with it. Id. He further testified that when Felder dropped the knife, Russell picked it up and "started slicing him with it." Id. at 386. On the basis of this testimony, the court assessed a two-level increase to Russell's base offense level for possessing a dangerous weapon during the course of the offense, pursuant to S 2D1.1(b)(1) of the Sentencing Guidelines.

C. Sentence

To compute Russell's offense level under the Sentencing Guidelines, the district court held a hearing concerning the quantity of drugs attributable to him. Ultimately, the court concluded that the quantity of drugs for which Russell was responsible could not be discerned from the trial testimony, and that "[t]he best estimate available to the court of a drug quantity for which Russell is responsible is found in the stipulations regarding drug quantity to which Russell's co-conspirators entered after pleading guilty to conspiring with Russell." App. at 137. Because Russell's co-conspirators stipulated that they were responsible for quantities not exceeding 20 kilograms of powder cocaine and 250 grams of cocaine base, the court determined that Russell was responsible for the same amount. Thus, the court assessed Russell's base offense level, under S 2D1.5(a)(1), at 38. With the two-level increase for possession of a firearm and a two-level increase for obstruction of justice, Russell's resulting offense level was 42. Applied to his criminal history category of II, his resulting imprisonment range under the Sentencing Guidelines was 360 months to life.

Russell appeals the conviction and sentence entered by the district court. The district court had jurisdiction under 18 U.S.C. S 3231, and we have jurisdiction under 18 U.S.C. S 1291.

4

II.

A. The CCE Statute & Specific Unanimity

The CCE statute under which Russell was convicted requires that the government prove the following elements: (1) that the defendant committed a drug-related felony under U.S.C. Title 21, Chapter 13, subchapter I or II; (2) that this violation was part of a "continuing series of violations" of the subchapter; (3) that the defendant acted as an organizer, supervisor or manager of five or more other persons in committing this series of violations; and (4) that the defendant obtained "substantial income or resources" from such activities. 21 U.S.C. S 848.

At issue here is the second element, which requires proof that "such violation is a part of a continuing series of violations." Id. With respect to this issue, the trial judge instructed the jury as follows:

> The phrase, a continuing series of violations means three or more violations of the federal narcotics laws which are in some way -- laws which are in some way related to each other. In order to find that this element has been established, you must unanimously agree that the Defendant, Mr. Russell, participated in at least three or more violations of the federal narcotics laws which are in some way related to each other

App. at 2094. Russell claims that the district court's instruction failed to advise the jury of the requirement that they unanimously agree as to the identity of the three related drug offenses constituting the criminal enterprise. Appellant's Br. at 27. At trial the government introduced substantial evidence of Russell's drug-related activity. But Russell claims that the general unanimity instruction permitted the jury to convict him so long as each juror was convinced that he had committed a series comprised of any three related drug violations, regardless of whether they unanimously agreed as to the identity of each underlying violation. See, e.g., United States v. Edmonds, 80 F.3d 810, 814 (3d Cir. 1996) ("For example, six jurors may have felt that violations A, B, and C (but no others) were related, and the other six jurors may have concluded that violations D, E, and F (but no others) were related.").

5

While it is true that in most cases a general unanimity instruction is sufficient to support a conviction, see United States v. Beros, 833 F.2d 455, 460 (3d Cir. 1987), a specific unanimity instruction is required "where the complexity of the case, or other factors, creates the potential that the jury will be confused." Id.; cf. United States v. Ryan, 828 F.2d 1010, 1020 (3d Cir.), rev'd on other grounds, United States v. Wells, 117 S. Ct. 921 (1997) ("[I]n any case where a count will be submitted to the jury on alternative theories, prudence counsels the trial court to give an augmented unanimity instruction if the defendant requests such a charge. Unanimity is an indispensable element of a federal jury trial.") (internal citation omitted). The purpose of a specific unanimity instruction is to ensure that the jurors are "in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." Beros, 833 F.2d at 460 (quoting United States v. Gipson, 553 F.2d 453, 457–58 (5th Cir. 1977)).

In Edmonds, we had to decide whether jury instructions relating to a charge under the CCE statute must direct the jury to agree unanimously on which of the alleged violations constitute the continuing series required by the statute. We held that a general unanimity instruction was insufficient to support a conviction under the CCE statute, concluding that the statute "requires unanimous agreement as to the identity of each of the three related offenses comprising the continuing series."1  Edmonds, 80 F.3d at 822 (emphasis added). Our decision in Edmonds was rooted in the principle that a federal defendant in a criminal trial has a constitutional right to a unanimous jury verdict. Id. at 823 ("[T]he district court's failure to give . . . [the] proposed specific unanimity instruction was error . . . implicat[ing] Edmonds's Sixth Amendment right to a unanimous verdict in a federal criminal trial."); see also,

_____

1. In United States v. Echeverri, 854 F.2d 638 (3d Cir. 1988), we held that a jury considering a CCE charge must unanimously agree on which three acts constitute the continuing series of violations. In Edmonds, sitting en banc, we explicitly recognized "the opportunity to reconsider Echeverri" and reaffirmed the decision reached in that case. 80 F.3d at 812.

Andres v. United States, 333 U.S. 740, 748 (1948) ("Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply."); Beros, 833 F.2d at 461 ("[J]ust as the sixth amendment requires jury unanimity in federal criminal cases on each delineated offense that it finds a defendant culpable, it must also require unanimity regarding the specific act or acts which constitutes that offense.") (internal citation omitted).

The jury instruction at issue in this case is constitutionally deficient in the same manner as was the instruction in Edmonds. In Edmonds, the trial court instructed the jury as follows:

> The government has to prove [ ] that such violation was part of a continuing series of related violations of the federal narcotics laws. A continuing series of violations requires proof beyond a reasonable doubt that three or more violations of the laws occurred and that they, those three or more, were related to each other.

80 F.3d at 813. Although Russell's jury was instructed that they must "unanimously agree" that he "participated in at least three or more violations of the federal narcotics laws," App. at 2094, this charge still amounted to a general, not a specific, unanimity instruction. The jury should have been instructed that unanimous agreement was required not only to find the existence of a continuing series, but in determining the composition of that series. Our holding in Edmonds was clear: "[t]he CCE statute requires unanimous agreement as to the identity of each of the three related offenses comprising the continuing series." Edmonds, 80 F.3d at 822 (emphasis added); see also Gipson, 553 F.2d at 456–57 ("The unanimity rule . . . requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged.")

To be sure, the government introduced compelling evidence that Russell had, in fact, engaged in a large number of drug-related transactions, any number of which could have been the basis for an individual juror's determination that he had participated in a continuing series of violations under the CCE statute. But the

7

instruction given by the district judge permitted the jurors to convict on the CCE count even if different jurors determined that Russell had committed different acts. Although the jurors may, in fact, have unanimously agreed on a particular set of predicate acts, we cannot speculate as to the content of the jury's deliberations. See United States v. Beros, 833 F.2d 455, 461 (3d Cir. 1987) (" `[W]e are not free to hypothesize whether the jury indeed agreed to and was clear on the' transaction or theory by which it found [the defendant] guilty.") (quoting United States v. Echeverry, 698 F.2d 375, modified, 719 F.2d 974 (9th Cir. 1983) (en banc)). Thus, because the jurors may well have agreed that a continuing series of violations had occurred, yet disagreed as to the identity of the three related offenses comprising the series, we conclude that the district court's failure to give a specific unanimity charge violated Russell's Sixth Amendment right to a unanimous verdict.[2]

B. Standard of Review

1. Preservation of Issue for Appeal

Though we have concluded that the charge on the CCE continuing series element was error, we must nevertheless determine whether it constituted reversible error. The government argues, and the dissent agrees, that Russell failed to preserve this issue, and thus the standard of review is plain error. For the following reasons, we believe that the issue was properly preserved, and therefore review for harmless error.

Rule 30 of the Federal Rules of Criminal Procedure provides that:

_____

2. We do not suggest that in addition to a specific unanimity charge, a special verdict form must be submitted to the jury requiring it to enumerate the specific predicate acts which it has determined constitute the continuing series. Nor do we believe it appropriate to prescribe specific language to be used when charging a jury with respect to the continuing series element of a CCE count. Just how the goal of ensuring unanimous agreement is better left to the insight and experience of district court judges on a case by case basis. We merely reaffirm our holding in Edmonds that the jury be instructed to reach unanimous agreement on the identity of the offenses constituting the continuing series.

8

No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection.

The purpose of this provision is to allow the district court an opportunity to correct potential problems in jury instructions before the jury begins its deliberations. See United States v. Logan, 717 F.2d 84, 91 (3d Cir. 1983) ("Rule 30 has the manifest purpose of avoiding whenever possible the necessity of a time-consuming new trial by providing the trial judge with an opportunity to correct any mistakes in the charge before the jury begins to deliberate.") (internal citation omitted).

The trial record in this case discloses the following sequence of events with respect to the charge. First, the judge gave a CCE charge which did not require specific unanimity with respect to the continuing series of offenses. App. at 2091-99. Next, the judge stated that the he would meet with counsel to "find out any objections or exceptions to the charge," and dismissed the jury for lunch. App. at 2141. During the ensuing conference, the prosecutor and defense counsel engaged in a discussion concerning the applicability of the Edmonds case. Russell's counsel argued that a special verdict was required by Edmonds. The government argued that the instruction as given was consistent with Edmonds. App. at 2145. The court then stated that it would consider the issue during the lunch break, App. at 2145, but the issue was not revisited.

Although Russell's counsel did not explicitly state that he was objecting to the CCE instruction,3 the colloquy between the court and counsel regarding the Edmonds case, and the

_____

3. Defense counsel made the following statement to the judge:

[Y]ou asked about the form, the form of the verdict and whether I thought that there was any change that needed to be made. I was attempting to point out that my interpretation of[Edmonds] seems to suggest that there is a need for a special verdict page that requires the jury to fill in three blank lines of which three federal

felony offenses that have unanimously agreed upon having been committed by the defendant.

9

context in which this conversation took place (an on-the-record conference to discuss objections and exceptions to the charge), lead us to conclude that the trial judge had sufficient notice of a possible error in the CCE jury instruction. As we noted earlier, the crux of Rule 30 is that the district court be given notice of potential errors in the jury instructions, not that a party be "required to adhere to any formalities of language and style to preserve his objection on the record." United States v. O'Neill, 116 F.3d 245, 247 (7th Cir. 1997) (internal citations omitted).4 Russell's trial counsel alerted the court to his belief that the charge as given did not comply with our decision in Edmonds, and the judge's statement that he would review the issue suggests that the court understood this as an objection (or at the very least, a point of disagreement with the charge as given).

_____

4. To the extent this sentiment has been expressed even more clearly in the civil context, it serves to further demonstrate why the dissent relies upon an overly formalistic interpretation of Rule 30 and its requirements. Interpretations of Rule 51 of the Federal Rules of Civil Procedure, the civil analog to Rule 30, indicate that formal objections are
not required. See, e.g., Larry V. Muko, Inc. v. Southwestern Pennsylvania Bldg. and Const. Trades Council, 670 F.2d 421, 425 (3d Cir. 1982) (issue preserved for appeal where the party "may not have formally objected to the jury charge, [but] it is clear from the record that the judge was made aware of [the party's] position before the jury retired to consider its verdict") (internal citation omitted); Kroger Co. v. Roadrunner Transp., Inc., 634 F.2d 228, 230 (5th Cir. 1980) ("The Rule does not require formality, and it is not important in what form an objection is made or even that a formal objection is made at all, as long as it is clear that the
trial judge understood the party's position . . . . The purpose of the Rule is to inform the trial judge of possible errors so that he may have an opportunity to correct them.") (emphasis added) (internal citation omitted). The dissent relies heavily upon Rule 30's admonition that a party state "distinctly the matter to which th[e] party objects and the grounds of the objection." This language is virtually identical to that in Rule 51 which states that a party must "state distinctly the matter objected to and the grounds of the objection." Thus, while we agree with Judge Alito's statement that Rule 30 "is a vitally important rule," we also
believe it would be nonsensical not to furnish criminal defendants with the same flexible, common-sense interpreation we afford litigants in the civil context.

10

Certainly, an objection must be specific enough not only to put the judge on notice that there is in fact an objection, but to serve notice as to the underlying basis for the objection. United States v. Sandini, 803 F.2d 123 (3d Cir. 1986). For example, in Sandini we determined that the substance of a colloquy between the judge and defense counsel was insufficient to have put the trial judge on notice that an objection was based on Rule 404(b) of the Federal Rules of Evidence, because defense counsel simply repeated three times that the information was "irrelevant." 803 F.2d at 126. Here, however, the trial court was put on notice that Russell believed that the instruction was incorrect because it lacked the requisite specificity, and that the basis for this belief was our decision in Edmonds.5

Finally, the context in which the colloquy between the court and the attorneys took place provides an additional basis for concluding that a proper objection was made. The judge convened this on-the-record meeting specifically to "find out any objections or exceptions to the charge." App. at 2141. This is, of course, a common practice in both

_____

5. We do not share the dissent's concern that during the colloquy, Russell's counsel argued that Edmonds required a special verdict form, see note 4, a position we have refused to adopt in this case. The dissent urges that we have committed a "serious error" by obscuring the distinction between an objection to a jury instruction and a request for a special verdict sheet, but we have done no such thing. To be clear, the only relevance we have placed on the defendant's request for a special verdict sheet is that it put the judge on notice that specific unanimity was needed. True, Russell's counsel, in requesting a special verdict form, may have overemphasized what Edmonds required. But it is undeniable that his remarks were sufficient to put the trial court on notice that, at the very least, he did not believe that the charge as given was in compliance with our holding in Edmonds. See United States v. Rosero, 42 F.3d 166, 173 (3d Cir. 1994) (Although alternative instruction advanced by defendant "was also erroneous," defense counsel, in objecting to court's charge, provided a clear explanation as to why the instruction was erroneous and therefore "preserved valid objections to the erroneous portion of the instructions.") Specifically, defense counsel called the judge's attention to the relevant language in Edmonds, which the judge indicated he would read. Ultimately, it was for the court to determine whether Edmonds required a special verdict form or simply a specific unanimity instruction. No such determination was ever made.

11

criminal and civil trials and serves as an invitation to counsel to suggest corrections or amendments to the charge, or to state or reiterate objections. Defense counsel took this opportunity to engage the court and prosecutor in an extended debate about whether or not the jury instruction at issue was consistent with Edmonds. We believe the court must have understood that Russell's counsel was stating an objection to the charge as given; thus, this issue was properly preserved for our review.[6]

2. Proposed Alternative Instruction

In addition to posing his objection, Russell's counsel proposed an alternative jury instruction, one which required specific unanimity as to the series of offenses under the CCE count. In our view, this constitutes an additional ground for applying a harmless error standard in this case.[7]

The failure to give the defendant's proposed jury instruction formed the primary basis for our decision in Edmonds. While our holding was certainly premised upon our discussion as to whether the court's charge was sufficient to assure jury unanimity, our primary focus was

_____

6. The dissent also urges that because Russell's counsel objected to instructions 51 and 43 (neither of which had anything to do with Edmonds), but failed to object to the general unanimity instruction at the same time, the issue was not preserved. However, as we have noted, Russell's counsel believed that a special verdict form was required by Edmonds. This belief, while incorrect, was not unreasonable. At the time Russell's counsel specifically objected to jury instructions 51 and 43, he did not know that the judge would not be using his proposed special verdict form. Although a special verdict form is not required, from the perspective of Russell's counsel a general unanimity instruction coupled with a special verdict form would have assured specific unanimity. Therefore, defense counsel had no reason to object to the unanimity instruction until the judge had ruled on his request for a special verdict.
Again, the underlying purpose of Rule 30 is to put the judge on notice as to potential errors. Here, as we discussed above, we believe the judge was put on notice of an Edmonds problem.

7. Defendant's proposed jury instruction Number 41 stated in pertinent part that "[y]ou as a jury, must agree unanimously on the three acts which constitute the continuing series of Federal Drug Law violations." Appellee's Supplemental Appendix at 25.

12

whether "the court's failure to give [the defendant's] proposed specific unanimity instruction" constituted error. Edmonds, 80 F.3d at 823.

Although it is unclear that proposing an alternative jury instruction is itself sufficient to preserve the issue for appeal, at least two of our cases have indicated that the plain error standard will be applied when there has been no specific objection to the charge as given and no alternative jury instruction has been submitted. See, e.g., Beros, 833 F.2d at 458 ("review under the more deferential`plain error' standard is appropriate in cases where no objection to jury instructions is made, or where no alternative jury instructions are proposed") (internal citations omitted); United States v. DeCarlo, 458 F.2d 358, 370 (3d Cir. 1972) (plain error analysis is applied "[i]n the absence of an alternative request or specific objection" to the charge). Other circuits have employed this analysis as well. See, e.g., United States v. Payseno, 782 F.2d 832, 834 (9th Cir. 1986) (Where defendant "did not request a specific unanimity instruction and failed to object to the court's instructions as given" appellate court will review for plain error.); United States v. Donathan, 65 F.3d 537, 540 (6th Cir. 1995) ("Since defendant neither requested nor submitted [an alternative] instruction, and did not object to the instructions given by the trial judge, the jury instructions are reviewable only for plain error."). However, at least two circuits have indicated that proposing an alternative jury instruction, without more, is insufficient to preserve the issue. See United States v. Tannenbaum, 934 F.2d 8, 14 (2d Cir. 1991) ("[R]equested instructions do not substitute for specific objections to the court's instructions.") (quoting United States v. Graziano, 710 F.2d 691, 696 n.8 (11th Cir. 1983).

Because we hold that the colloquy between the district judge and trial counsel was tantamount to an objection and therefore sufficient to preserve this issue for our review, we need not determine here whether or not proposing an alternative instruction would be sufficient in and of itself to avoid a plain error standard of review. However, under the facts of this case, where defense counsel not only proposed an alternative jury instruction but engaged the court and

13

prosecutor in a colloquy regarding an alleged error in the charge, the issue was sufficiently preserved to invoke a harmless error analysis.

3. Plain Error Analysis

We have concluded that the appropriate standard of review in this case is harmless error. The government took the position at oral argument that the appropriate standard is plain error. The dissent agrees. Ultimately, however, we believe the jury charge constituted reversible error even under the more deferential plain error standard.

For there to be plain error, there must be an "error" that is "plain" and that "affects substantial rights." United States v. Retos, 25 F.3d 1220, 1228 (3d Cir. 1994) (quoting United States v. Olano, 507 U.S. 725 (1993)). A deviation from a legal rule is "error." Id. at 733. A "plain" error is one which is "clear" or "obvious." Id. at 734. In this case the court erred when it "deviated from the legal rule" that jurors must be instructed as to the requirement of specific unanimity to find a continuing series under the CCE statute. Furthermore, the error was plain in that it was "clear" and "obvious" from even a cursory reading of our decision in Edmonds that a finding of specific unanimity was required to sustain a CCE conviction. Edmonds, 80 F.3d at 822; see also United States v. Stansfield, 101 F.3d 909, 920 (3d Cir. 1996) (omission of essential element of offense from jury instructions "usually will be obvious error," therefore satisfying the requirements that there be "error" and that the error be "plain").

Having determined that the error was plain, we must now examine whether the error "affected substantial rights," thus constituting reversible error under plain error review. See Retos, 25 F.3d at 1228. We have no hesitation in concluding that the error did affect a substantial right of Mr. Russell -- his constitutional right to a unanimous jury verdict on each element of the CCE charge. The Supreme Court has held that due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." United States v. Xavier, 2 F.3d 1281, 1287 (3d Cir. 1993) (quoting In re Winship, 397 U.S. 358, 364 (1970)). See Government of

14

Virgin Islands v. Brown, 685 F.2d 834 (3d Cir. 1982) ("The omission of an essential element of an offense in the charge to the jury ordinarily constitutes plain error.") At least one other circuit has found plain error under circumstances similar to those presented here. See United States v. Payseno, 782 F.2d 832, 836-37 (9th Cir. 1986) (after trial court gave a general unanimity instruction, the reviewing court found that there was a genuine possibility that the jurors were not unanimous as to which of the charged offenses supported the verdict, and held that the failure to give a specific unanimity instruction therefore constituted plain error).

C. Harmless Error Analysis

Under a harmless error review, if we find a constitutional error, we may affirm the district court "only if the error is harmless beyond a reasonable doubt." United States v. Molina-Guevara, 96 F.3d 698, 703 (3d Cir. 1996) (citing Chapman v. California, 386 U.S. 18, 24 (1967)). Under the facts of this case, we cannot conclude that the error in the charge to the jury was harmless beyond a reasonable doubt, and therefore must reverse.

Although the government introduced a vast array of evidence regarding Russell's drug-related activity, and the jury determined that Russell was engaged in a continuing series of violations, as we discussed above, it is impossible to conclude beyond a reasonable doubt that the jury reached unanimous agreement as to which specific violations occurred. Therefore, we can only conclude that Russell was deprived of his Sixth Amendment right to a unanimous jury verdict. See, e.g., Beros, 833 F.2d at 463 ("Because there is a significant possibility that this error may have resulted in a non-unanimous verdict in violation of the Sixth Amendment, the district court's instructions were not harmless beyond a reasonable doubt."). Despite the enormous volume of evidence introduced against Russell, "we cannot affirm a non-unanimous verdict simply because the evidence is so overwhelming that the jury surely would have been unanimous had it been properly instructed on unanimity." Edmonds, 80 F.3d at 824.

In Edmonds we ultimately determined that the failure of the court to provide a specific unanimity instruction was

15

harmless error. But the facts which formed the basis for that conclusion are not present in this case. In Edmonds, the defendant was convicted of every violation alleged to constitute the continuing series for the CCE charge. Edmonds, 80 F.3d at 812–13. We did not have to speculate whether the jurors reached agreement as to the identity of each of the three offenses constituting the series, because we had a jury verdict which demonstrated that each juror believed the defendant to be guilty of all of the violations constituting the series.

Russell, on the other hand, was not charged separately with all of the underlying offenses which, according to the government, constituted the continuing series for the CCE count.8 Although he was convicted of conspiracy to distribute controlled substances, and the government has urged that this is the "functional equivalent" of a finding of unanimity on the continuing criminal enterprise charge, Appellee's Br. at 34–35, we cannot agree. The jury returned a unanimous verdict on the conspiracy charge, but we can only conclude from this that the jury agreed that Russell was guilty of that one predicate offense.

The CCE statute requires that the defendant participate in a "continuing series" of violations of the federal drug laws. 21 U.S.C. S 848. We have held that a "continuing series" consists of three or more separate violations. Echeverri, 854 F.2d at 643. A jury finding that the defendant was guilty of a single predicate act cannot be the "functional equivalent" of a jury finding that the defendant participated in a continuing series of three violations. It is on this basis that we hold that the district court's failure to instruct the jury as to the requirement of specific unanimity for the continuing series element did not amount to harmless error.

_____

8. Although Russell was charged with multiple counts, only the count of conspiracy to distribute controlled substances under 21 U.S.C. S 846 could qualify as a CCE predicate act, because the CCE statute expressly requires that the violations constituting the continuing series be of U.S.C. Title 21, Chapter 13, subchapter I or II. 21 U.S.C. S 848.

16

D. Conclusion

In summary, we hold that the jury instruction at issue was erroneous because it failed to apprise the jury of their responsibility to unanimously agree on the identity of the three predicate violations constituting the continuing series required for a CCE conviction. Furthermore, the failure to give a proper unanimity instruction constitutes reversible error under either a harmless error or plain error standard of review. Accordingly, we will reverse the defendant's conviction under 21 U.S.C. S 848, the CCE statute.

III.

Russell has raised a number of other challenges to his conviction, none of which has merit. We will discuss each of them in turn.

A. Alleged Evidence of Multiple Conspiracies

Russell contends that his rights were prejudiced by the admission of evidence of multiple conspiracies at variance with the single conspiracy alleged in the indictment. Specifically, Russell maintains that evidence relating to his activity at the "pink house" and drug activity in Philadelphia illustrate the existence of two other conspiracies separate from the Williamsport conspiracy charged in the indictment. Russell argues that he has been prejudiced because this evidence permitted the jury"to consider offenses unrelated to the Williamsport conspiracy when determining [his] guilt on the conspiracy count." See Appellant's Br. at 30–38. We disagree. Russell has not been prejudiced because the evidence offered by the government supports the finding of a single conspiracy encompassing the drug activities in Williamsport, Philadelphia and the "pink house."

To determine whether a series of events constitutes a single conspiracy or separate, unrelated conspiracies, a three-step inquiry is required: (1) determining whether there was a common goal among the conspirators; (2) examining the nature of the scheme and determining whether the agreement sought to bring about a continuous result which could not be sustained without the continued

17

cooperation of the conspirators; and (3) examining the extent to which the participants overlapped in various dealings. United States v. Kelly, 892 F.2d 255, 259 (3d Cir. 1989). Clearly, the common goal of this conspiracy was to make money selling cocaine. After applying the Kelly factors, it seems obvious that virtually all activities the co-conspirators engaged in to make money selling cocaine could be encompassed within this single conspiracy. A conspiracy charge often casts a wide net, and drug distribution activities conducted in different locations can certainly be encompassed within a single conspiracy. Nor are we concerned that only Russell, not his co-conspirators, sold drugs out of the "pink house." Co-conspirators do not have to know all of the details, goals or even the identity of other co-conspirators, to support the finding of a single conspiracy. Id. at 260. We therefore affirm the jury's verdict on the conspiracy count.

B. Admission of Evidence Relating to Maple Shade
       Arrest and Handgun Purchases

Russell challenges the admission of evidence relating to his arrest in 1991 in Maple Shade, New Jersey. He also challenges the evidence introduced pertaining to several handgun purchases made on his behalf by Melita Garcia, his girlfriend. Russell maintains that the events surrounding the arrest were not relevant to the issues to be decided by the jury because they occurred in April 1991, one year prior to the beginning of the conspiracy alleged in the indictment. He challenges the evidence of handgun purchases on the basis that: (1) there was no evidence presented that he actually possessed the guns; and (2) three purchases occurred prior to the April 1992 date cited in the indictment as the beginning of the conspiracy.

The events relating to the Maple Shade arrest were relevant at trial to show a common scheme or plan in relation to the conspiracy alleged in the indictment. The evidence at trial established that Russell and Smith were arrested in Maple Shade on their way from New York where they had purchased cocaine from one of Russell's sources. App. at 1272. This same source was later used by Russell to purchase drugs for his Williamsport operation. From these events, a jury could reasonably infer a common

18

scheme or plan similar to that operated by Russell in Williamsport and in which Smith participated. The evidence was probative to establish an association between Smith and Russell, to establish how the drug operation functioned (i.e., drugs supplied from New York), and to establish a common purpose. See, e.g., United States v. Montoya-Ortiz, 7 F.3d 1171, 1177-78 (5th Cir. 1993) (jury could consider prior conduct to determine that conduct charged was not "coincidence, accident, or mistake, but was instead a part of [a scheme] in furtherance of " a particular goal or purpose); United States v. Fitzherbert, 13 F.3d 340, 343 (10th Cir. 1993) (evidence of prior marijuana operation admissible to establish "knowledge, intent, and the presence of a common scheme or plan.").

Russell's challenge to the admission of evidence relating to his gun purchases is equally unpersuasive. Russell contends that the evidence was not relevant because there was no evidence presented relating to his use or possession of the guns. In our view, the jurors could have reasonably concluded that he possessed the guns which were, after all, purchased for him. Furthermore, it has long been recognized that firearms are relevant evidence in the prosecution of drug-related offenses, because guns are tools of the drug trade. United States v. Muniz, 60 F.3d 65, 71 (2d Cir. 1995); see also United States v. Adams, 759 F.2d 1099, 1109 (3d Cir. 1985) (gun possession probative as to scale of conspiracy and type of protection conspirators believed was necessary to protect their operation). Finally, Russell contends that because three of the gun purchases occurred prior to the date cited in the indictment as the beginning of the conspiracy, these purchases cannot be relevant. We disagree. The jury reasonably could have concluded that gun purchases completed prior to the beginning of the drug conspiracy were made with the anticipation that he would need "protection" to establish his drug operation.

For the foregoing reasons, we conclude that the district court's admission of evidence regarding the defendant's Maple Shade arrest and gun purchases was not an abuse of discretion.

19

C. Two-Level Increase in Offense Level for Weapons
        Possession

The district court imposed a two-level increase in
Russell's offense level for possessing a dangerous weapon
pursuant to S 2D1.1(b)(1) of the Sentencing Guidelines. The
facts which formed the basis for this increase were
Russell's possession of the knife used to assault George
Felder in October 1994, and Russell's possession of two
guns, purchased by Melita Garcia. Russell maintains that
he used the knife in self-defense and argues that this is not
the type of possession contemplated by the Sentencing
Guidelines to warrant a two-level increase. We find this
argument unpersuasive.

The Sentencing Guidelines provide that the two-level
adjustment should be applied "if the weapon was present,
unless it is clearly improbable that the weapon was
connected with the offense." U.S.S.G. S 2D1.1, comment.
(n.3). The testimony relating to the knife assault
unequivocally established that the confrontation between
Russell and Felder involved a dispute about proceeds
generated from drug activity. Under such circumstances,
we cannot conclude that it was "improbable" that the knife
was connected with the offense. Moreover, inasmuch as we
believe that the district court's imposition of the two-level
increase on this basis was proper, we need not determine
whether an adjustment would have been appropriate under
a gun possession theory.

D. Use of Stipulations To Establish Drug Quantity

To sentence a defendant on a drug-related charge, the
district court must determine the quantity of drugs for
which the defendant was responsible. After reviewing the
record from Russell's trial, however, the district court
concluded that the quantity of drugs for which Russell was
responsible could not be discerned from the trial testimony.
In order to ascertain a quantity that could be attributed to
Russell's drug conspiracy and continuing criminal
enterprise, the court relied on stipulations agreed to
between the government and Russell's co-conspirators,
stating that they "form[ed] a highly reliable basis for an
estimate of the drugs attributable to Russell." App. at 134.

20

The district court sentenced Russell based on the same quantity of drugs his co-conspirators stipulated to, 20 kilograms of powder cocaine and 250 grams of cocaine base. Russell objects to the district court's method, urging that it is an unreliable measure of the amount of drugs for which he was accountable.

We are unpersuaded by Russell's argument. First, Russell was the organizer of the conspiracy. We believe that the quantity of drugs for which his co-conspirators have taken responsibility provides a reliable basis for estimating the quantity of drugs attributable to him. Second, even if the estimate was unreliable, it was overgenerous to Russell. The evidence at trial showed that because of his operation at the "pink house," Russell actually participated in a greater number of drug transactions than did his co-conspirators. For the foregoing reasons, we affirm the sentence imposed by the district court for Russell's conspiracy conviction. We will reverse Russell's conviction and vacate his sentence on the CCE count, and remand for further proceedings consistent with this opinion.

21

ALITO, Circuit Judge, concurring and dissenting:

I concur in the affirmance of the defendant's conspiracy conviction, but I respectfully dissent from the reversal of his conviction for conducting a continuing criminal enterprise (CCE), in violation of 21 U.S.C. S 848. The majority reverses that conviction because of an error in the CCE jury instruction, viz., the omission of an instruction specifically advising, as our court held in United States v. Edmonds, 80 F.3d 810 (3d Cir. 1996) (in banc), that the jurors were required to agree unanimously on the three CCE predicates that the defendant committed. Unlike the majority, I do not think that the defendant's trial counsel objected to this omission, as Rule 30 of the Federal Rules of Criminal Procedure demands. I therefore believe that the question before us in this appeal is whether the challenged omission constituted "plain error" (Fed. R. Crim. P. 52(b)), and I do not think that the demanding test for "plain error" is met here.

1. Before discussing defense counsel's failure to object to the instruction in question, I think that it may be helpful to provide some background regarding the unanimity requirement that is involved in this appeal. In order to be convicted under 21 U.S.C. S 848 for conducting a continuing criminal enterprise, a defendant must have committed a felony violation of the federal drug laws, and this violation must be "a part of a continuing series" of such violations. In United States v. Echeverri, 854 F.2d 638, 642 (3d Cir. 1988), a panel of our court held that a "series" in this context means at least three violations. Id. The panel further held that the jury must agree unanimously on the three violations that are used to support a CCE conviction and that a trial judge must, on request, give a jury instruction specifically setting out this unanimity instruction. Id. at 642-43.

In Edmonds, a later CCE prosecution, the district court refused to give such an instruction, and a panel of our court held that this refusal required reversal. In a concurring opinion, Judge Hutchinson observed that, if the panel had not been bound by Echeverri, he would have been "inclined to follow the reasoning of the Seventh Circuit in United States v. Canino, 949 F.2d 928, 947-948 (7th Cir.

22

1991), cert. denied, [503 U.S. 996 and cert. denied, 504 U.S. 910 (1992)]," which held that the jurors in a CCE case need not agree unanimously on the particular CCE predicates. Slip op. at 26 (Hutchinson, J., concurring). Similarly, Judge Garth, in concurrence, stated that he "shar[ed] Judge Hutchinson's concerns regarding the Echeverri doctrine." Slip op. at 28 (Garth, J., concurring in part and dissenting in part). He added that he perceived "conceptual tension" between Echeverri and our court's decision in United States v. Jackson, 879 F.2d 85 (3d Cir. 1989), in which we held that jurors need not agree unanimously on the identities of the five or more persons that a CCE defendant organized, supervised, or managed. Slip op. at 28 (Garth, J., concurring in part and dissenting in part). Judge Garth suggested that this tension"call[ed] for further resolution." Id.

The panel opinion in Edmonds was filed on April 18, 1995, and Russell's trial commenced a few weeks later, on June 5, 1995. On June 29, 1995, during the course of that trial, the government's petition for rehearing in banc in Edmonds was granted and the panel opinion was vacated. Russell's jury was instructed on July 12, 1995 -- after Edmonds was listed for rehearing in banc and well before that case was reargued (October 25, 1995) and the in banc decision was handed down (April 4, 1996).

In Edmonds, the full court held, by a narrow vote, that the CCE statute requires that jurors agree unanimously on the particular CCE predicates. The court further held that the district court's refusal to give a specific unanimity instruction was erroneous but that the error was harmless. For the reasons set out in my concurring opinion and Judge Garth's concurring opinion in Edmonds, I continue to believe that the CCE statute does not contain any such special unanimity instruction, but I recognize that we are bound to follow that holding here.

2. With this background in mind, I turn to the que stion whether defense counsel in this case adequately objected to the instruction on which the majority relies. Rule 30 of the Federal Rules of Criminal Procedure provides in pertinent part as follows:

23

No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

This is a vitally important rule. It promotes judicial economy by eliminating unnecessary appeals and retrials. More important, because appellate reversals and retrials produce delay, and because delay often results in the loss or impairment of evidence, Rule 30 serves to promote accuracy in jury verdicts. As the majority points out, a lawyer is not required to use any special language to satisfy Rule 30; the lawyer must simply use words that are reasonably calculated to get the message across. In this case, however, defense counsel did not do so.

After the district court judge completed his charge, he asked whether counsel had any objections. Supp. App. at 6.[9] Defense counsel then objected to the trial judge's failure to cover two instructions requested by the defense, i.e., number 51 and number 43. Id. at 7-8. Neither of these requested instructions had anything to do with the issue of jury unanimity regarding particular CCE predicates. After the district court ruled on these two matters, the following exchange occurred:

THE COURT: Do you have anything else?

MR. TRAVIS [defense counsel]: No, Your Honor.

Id. at 9.

The jury then retired to deliberate and subsequently sent out a note requesting "a limited reading of the Judge's charge as to count one [the CCE count]." App. at 2155.[10] In response, the court proposed to read virtually the entire charge concerning the CCE count, and both counsel agreed. Id. at 2156. As a result, the district court once again read to the jury the portion of the charge that the

_____

9. "Supp. App." refers to the Supplemental Appendix filed by the government.

10. "App." refers to the appendix filed by the appellant.

24

defendant now challenges on appeal. The following then occurred:

> THE COURT: ...Do you have any objection to those instructions, counsel?

> MR. ROCKTASHEL [the prosecutor]: No, Your H onor.

> THE COURT: Do you, sir?

> MR. TRAVIS [defense counsel]: No, Your Hono r.

Id. at 2163–64.

Thus, defense counsel twice told the trial judge that he had no objection to the jury instruction that is challenged in this appeal. Moreover, defense counsel never mentioned or referred even obliquely to Edmonds during the colloquy devoted to objections to the instructions. Accordingly, defense counsel did not, in my view, adequately convey to the trial judge the simple message that was necessary in order to comply with Rule 30, i.e., "Judge there's a mistake in the jury charge. It doesn't tell the jurors that they must agree unanimously regarding the three CCE predicates."

It is true that defense counsel did subsequently mention Edmonds, but he did so in connection with an entirely different question, i.e., whether the district court should give the jury a special verdict sheet concerning the CCE predicates. Some time after the colloquy concerning the jury instructions, the court stated:

> Now, there is one other thing, and that is ... I understood you to say, Mr. Travis, that there were certain specific findings that were required under Count One.

July 12, 1995 Tr. at 70. Defense counsel then referred to the panel decision in Edmonds (which, as previously noted, had been filed on April 18, 1995, but vacated on June 29, 1995, when rehearing in banc was granted). Defense counsel stated: "[T]he impression I had was that you had to give [the jurors] a special verdict page where they said, these are the three violations ..." App. at 2143. The court asked:

> THE COURT: Well what are you asking that we do?

25

Id. Defense counsel responded as follows:

> Well I —— you asked about the form, the form of the verdict and whether I thought that there was any change that needed to be made. I was attempting to point out that my interpretation of [Edmonds] seems to suggest that there is a need for a special verdict page that requires the jury to fill in three blank lines of which three federal felony offenses they have unanimously agreed upon having been committed by the Defendant, if they agree on that element.

Id. (emphasis added). The district court judge said that he would read the Edmonds panel opinion, but he observed that he thought that "there's a general reluctance on the Court of Appeals to require any special verdict forms in criminal cases." App. at 2144. Later, the court decided not to give the jury a special verdict sheet, and the defendant does not challenge that decision on appeal.

I disagree with the majority's conclusion that defense counsel, by requesting a special verdict sheet, adequately conveyed to the district court the message that the court's jury instruction was inconsistent with the Edmonds panel decision. As noted, defense counsel, by this point, had twice failed to object to the challenged jury instructions, and when defense counsel finally mentioned Edmonds and the trial judge pointedly asked, "Well, what are you asking that we do" (App. at 2143), defense counsel's only request was that the court give the jury a special verdict sheet. Id.

In my view, the question whether a trial judge is required to give a special instruction on jury unanimity in a CCE case is separate from the question whether a trial judge is required to use a special verdict sheet. Although the Edmonds panel and in banc decisions held that it is error to decline to give a special jury unanimity instruction when one is requested, neither the Edmonds panel opinion nor the Edmonds in banc opinion requires a special verdict sheet. On the contrary, we have held that, as a general matter, a district court "has discretion in determining whether to submit special interrogatories to the jury regarding the elements of an offense." United States v. Console, 13 F.3d 641, 663 & n.23 (3d Cir. 1993). By

26

obscuring the important distinction between an objection to a jury instruction and a request for a special verdict sheet, the majority, I believe, has committed a serious error.

In addition to relying on defense counsel's request for a special verdict sheet, the majority also relies on the defendant's proposed jury instruction number 41, which stated in pertinent part that the jury was required to "agree unanimously on the three acts which constitute the continuing series of Federal Drug Law violations." See Maj. Op. at 12 n.7 (quoting Supp. App. 25). If defense counsel had objected to the court's charge on the ground that it failed to cover this point, and if the district court had nevertheless declined to cover that point, then this case would be indistinguishable from Edmonds, and I would join the majority in voting to reverse. However, that is not what occurred. After the district court completed its jury instructions and asked defense counsel whether he had any objections, defense counsel referred to the 93 pages of proposed instructions that he had submitted and asked whether he could assume that any instruction that had not been given should be "deemed denied." Supp. App. at 6. The court rejected this suggestion and instructed defense counsel to assert any objections he had to the instructions that the court had given. Id. Then, as previously noted, defense counsel argued that the court had erred in failing to cover two of the requested defense instructions, i.e., numbers 51 and 43. Id. at 7–8. Defense counsel made no reference to instruction number 41, and therefore it seems to me that, simply by including that instruction in the large packet of requested defense instructions, the defense did not fulfil its obligation under Rule 30 to assert an objection to the court's instructions and state "distinctly the matter to which th[e] party objects and the grounds of the objection."

For these reasons, I would hold that defense counsel did not adequately object at trial to the jury instruction that is now challenged on appeal. Consequently, I believe that our review is limited to determining whether the district court's instruction constituted "plain error." Fed. R. Crim. P. 52(b).

3. As noted, the in banc court held in Edmonds that, in order to find a defendant guilty under the CCE statute, 21

27

U.S.C. S 848, a jury must unanimously agree that the same three related predicate offenses occurred. The court further held that the district court in that case erred in rejecting a defense request for an instruction specifically advising the jurors that they were required to agree unanimously on which three related violations occurred.

The instruction challenged in this case did not affirmatively mistake the law, as interpreted in Edmonds. The instruction did not advise, contrary to Edmonds, that it was unnecessary for the jurors to agree unanimously regarding the three CCE predicate offenses that occurred. In the challenged instruction, the district court stated:

> The phrase, a continuing series of violations means three or more violations of the federal narcotics laws which are in some way -- laws which are in some way related to each other. In order to find that this element has been established, you must unanimously agree that the Defendant, Mr. Russell, participated in some way in at least three or more violations of the federal narcotics laws which are in some way related to each other.

App. at 2094. See also App. at 2158-59. As far as it went, this instruction was entirely accurate: in order for the jury to find that Russell violated 21 U.S.C. S 848, it was necessary that they "unanimously agree that . . . Mr. Russell participated in some way in at least three or more violations of the federal narcotics laws which are in some way related to each other." App. at 2094. The problem with this instruction is not that it was inaccurate but that it was incomplete: it did not go on and explain to the jurors that they were required, not only to agree unanimously that Russell committed three CCE predicates, but to agree unanimously with respect to the three particular predicates that he committed.

In my view, this failure to provide the jury with a more complete and specific explanation of the unanimity requirement in a CCE case does not amount to "plain error." In United States v. Olano, 507 U.S. 725 (1993), the Supreme Court held that, in order for an appellate court to find plain error, it must first find 1) an error 2) that is plain and 3) that affects substantial rights. Even if all three of

28

these prerequisites are met, an appellate court may correct an error to which no objection was made "only if (4) the error `seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " Johnson v. United States, 117 S. Ct. 1544, 1549 (1997) (quoting Olano, 507 U.S. at 732) (internal quotation marks omitted).

Here, I agree that the first of these four requirements (there was an error) was met. But I do not believe that the second requirement (the error was "plain") was satisfied, and therefore I need not consider the third or fourth requirement.

" `Plain' is synonymous with `clear' or, equivalently, `obvious.' " United States v. Olano, 507 U.S. at 734. As we have explained:

> To find plain error, the mistake must be sufficiently obvious that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it."

Government of Virgin Islands v. Knight, 989 F.2d 619, 632 (1993) (quoting United States v. Frady, 456 U.S. 152, 163 (1982)). In my view, the omission in this case was not "sufficiently obvious that `the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.' " Knight, 983 F.2d at 632 (quoting Frady, 456 U.S. at 163). The omission was simply a mistake, the sort of mistake that would have constituted reversible error had defense counsel called it to the trial judge's attention as required by Rule 30, but a mistake that falls short of constituting "plain error." "The Supreme Court has admonished courts of appeals to characterize a mistake as plain error `sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " Knight, 989 F.2d at 631 (quoting United States v. Young, 470 U.S. 1, 15 (1985). "Reviewing courts are not to use the plain-error doctrine to consider trial court errors not meriting appellate review absent timely objection." United States v. Young, 470 U.S. at 16. That, in my judgment, is what the majority has done here. For that reason, I dissent from the reversal of the defendant's CCE conviction.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit