

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-6-2007

# USA v. Ifeoluwa

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3066

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Ifeoluwa" (2007). 2007 Decisions. Paper 476.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/476

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3066
_____

UNITED STATES OF AMERICA,

v.

ODUMOSU E. IFEOLUWA, a/k/a DENNIS JONES, a/k/a MICHAEL BRANDON,
a/k/a JON MALONE, a/k/a PEARLY WILLIS, a/k/a HENRY KELLY,

Odumosu E. Ifeoluma,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00736)
District Judge: Honorable John R. Padova

_____

Submitted Under Third Circuit LAR 34.1(a),
April 24, 2007

Before: SCIRICA, <u>Chief Judge</u>, FUENTES and ALARCÓN,[*] <u>Circuit Judges</u>.

---

[*] The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation.

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge.

Odumosu Ifeoluwa pleaded guilty to four counts of bank fraud in violation of 18 U.S.C. § 1344 and was sentenced by the District Court to 75 months in prison, to be followed by 5 years of supervised release.  In addition, the District Court ordered Ifeoluwa to pay $417,288.59 in restitution.  In this pro se appeal, Ifeoluwa argues that the District Court improperly imposed a sentence above the range of 51 to 63 months of imprisonment recommended by the United States Sentencing Guidelines, and declined to grant him sentencing credit for time spent in state and immigration custody.  For the reasons that follow, we will affirm the sentence.[1]

**I.**

Between June 2000 and May 2003, Ifeoluwa participated in a complex bank fraud scheme, in which he and several co-conspirators deposited stolen and altered checks into

_____

[1] We have jurisdiction over sentencing appeals pursuant 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We review the ultimate sentence imposed by a district court for reasonableness.  United States v. Cooper, 437 F.3d 324, 327 (3d Cir. 2006).  We review factual findings that underlie the sentence for clear error, United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2006) (en banc), and exercise plenary review over a district court's legal determinations.  United States v. Lloyd, 469 F.3d 319, 321 (3d Cir. 2006).

bank accounts and then withdrew the funds by purchasing and cashing postal money orders. On November 17, 2004, Ifeoluwa was indicted in the United States District Court for the Eastern District of Pennsylvania on four counts of bank fraud, in violation of 18 U.S.C. § 1344. Each count carried a statutory maximum of 30 years of imprisonment and a $1 million fine.[2]

The indictment, to which Ifeoluwa pleaded guilty without a written plea agreement, charged him with the following conduct:

- Count I: PNC Bank Scheme. Count I involved the following four fraudulent deposits totaling approximately $373,171:

  (1) On February 19, 2002, a co-conspirator fraudulently opened an account at PNC Bank, into which he deposited a stolen check in the amount of $77,306. On March 11, 2002, Ifeoluwa purchased and cashed six postal money orders paid from the account in the amount of $2,925 and, on March 20, 2002, purchased and cashed a seventh postal money order in the amount of $700.

  (2) On March 5, 2002, a co-conspirator fraudulently opened a second account at PNC Bank, into which he deposited a stolen check in the amount of $102,981.25. Between March 15 and 19, 2002, Ifeoluwa purchased and cashed fifteen postal money orders paid from the account totaling $9,250. On March 20, 2002, he purchased and cashed four additional postal money orders totaling $2,800.

  (3) On May 10, 2002, Ifeoluwa fraudulently opened a third account at PNC Bank, into which he deposited a stolen and altered check in the amount of $98,280.

---

[2] Because this appeal concerns, in part, the District Court's loss calculations, we recount in some detail the complex financial transactions that served as the basis of both the indictment and the District Court's sentencing determination.

(4) On November 4, 2002, a co-conspirator fraudulently opened a fourth account at PNC Bank, into which he deposited a stolen check in the amount of $94,604. On November 8 and 9, 2002, Ifeoluwa purchased and cashed six postal money orders paid from the account totaling $3,600.

- Count II: Commonwealth Bank Scheme. On March 5, 2002, Ifeoluwa fraudulently opened an account at Commonwealth Bank, into which he deposited a stolen check in the amount of $60,000.

- Count III: Commerce Bank Scheme. On April 24, 2002, Ifeoluwa fraudulently opened an account at Commerce Bank, into which he deposited a stolen check in the amount of $35,220. Between July 20 and 23, 2002, Ifeoluwa purchased and cashed 14 postal money orders paid from the account totaling $7,280.

- Count IV: Progress Bank Scheme. On May 15, 2003, Ifeoluwa fraudulently opened an account at Progress Bank, into which he deposited a stolen check in the amount of $30,109.

At his sentencing hearing on June 14, 2005, the District Court adopted the facts and conclusions set forth in the Presentence Investigation Report ("PSR"). Using the 2002 edition of the Guidelines, the PSR calculated the total offense level as follows: a base offense level of 6 pursuant to § 2B1.1; an additional 14-level increase pursuant to § 2B1.1(B)(1)(H), based on roughly $498,500 in losses to the victims;[3] and a 3-level

---

[3] Application Note 2 to § 2B1.1 provides that "loss is the greater of actual loss or intended loss." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.2. "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." Id. "Intended loss" is defined as "pecuniary harm that was intended to result from the offense" and "includes intended pecuniary harm that would have been impossible or unlikely to occur." Id. The PSR's calculation was based on "actual loss of $373,171.61 from the PNC scheme, the intended loss of $60,000 from the Commonwealth scheme, the intended loss of $35,220 from the Commerce scheme, and the actual loss of $30,109 from the Progress scheme." (PSR at ¶ 34 n.5.) The PSR noted that this amount was greater than the $417,288.59 recommended as restitution. (Id.)

4

reduction for acceptance of responsibility pursuant to § 3E1.1(a) and (b). The total offense level was therefore 17 which, when combined with a criminal history category of VI, resulted in a recommended Guidelines range of 51 to 63 months of imprisonment.[4]

The only objection to the District Court's Guidelines calculation came from the government, which argued that the 14-level increase, based on $498,500 in total losses to the victims, was inappropriate. Rather, the government asserted, Ifeoluwa's total offense level should reflect an additional $555,766 in losses resulting from the following conduct not charged in the indictment:

> (1) On October 2, 2001, Ifeoluwa fraudulently opened a Commerce Bank account into which he deposited a stolen check in the amount of $37,000. On November 15, 2001, Ifeoluwa fraudulently opened a mutual fund account into which he deposited a stolen check in the amount of $78,174. Ifeoluwa ultimately depleted the total amount of $115,174 deposited into the two accounts.

> (2) Between January 2002 and July 2002, Ifeoluwa's co-conspirators deposited $440,592 in stolen checks into two of the PNC bank accounts identified in the indictment—this amount was not included in the indictment.

With respect to the second set of conduct, the government was only able to proffer evidence that Ifeoluwa depleted $6,475 from these two accounts. It nevertheless argued

---

[4] Ifeoluwa's criminal history category reflected the following 5 prior adult criminal convictions: (1) a September 1988 state conviction for 11 counts of forgery and receipt of stolen property; (2) a November 1988 state conviction for theft and forgery; (3) a November 1990 state conviction for theft by deception; (4) a December 1990 federal conviction for misuse of a social security number; and (5) a March 2002 state conviction for forgery. It also reflected the fact that Ifeoluwa committed the instant offense while on probation with the Philadelphia Adult Probation and Parole Department. An additional 6 adult criminal convictions identified in the PSR were not counted in determining Ifeoluwa's criminal history category.

that the entire $440,592 loss was a foreseeable consequence of the conduct to which Ifeoluwa pleaded guilty.[5]  According to the government's calculation, therefore, Ifeoluwa was responsible for more than $1 million in losses (the 498,500 charged in the indictment plus the additional $555,766 in losses identified by the government), justifying a 16-level increase pursuant to § 2B1.1(B)(1)(I).  The District Court rejected the government's calculation, ruling that there was insufficient basis in the record to attribute the additional losses to Ifeoluwa for purposes of § 2B1.1.  The District Court did state, however, that it would consider the losses in applying the sentencing factors set forth in 18 U.S.C. § 3553(a).

Turning to § 3553(a), the District Court made several findings that, in its view, warranted a sentence above the recommended Guidelines range.  With respect to the amount of loss, the District Court stated that "the sentencing guideline calculations do not reflect what this Court finds with respect to the extent of the money that he was involved in through this criminal scheme.  And that is, at least, another hundred and twenty-two thousand dollars.  And that does expand the nature and the circumstances of the offense under 3553(a)."[6]  (Appellant's Appx. II at 33.).

---

[5] Application Note 2 to § 2B1.2 defines "reasonably foreseeable pecuniary harm" as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."  U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.2.

[6] The $122,000 referred to the unindicted conduct identified by the government—the $115,174 Ifeoluwa withdrew from the two accounts he opened in October and November 2001, plus the $6,475 that the government established Ifeoluwa

6

The District Court further stated that Ifeoluwa's criminal history "indicates to this Court an appalling lack of regard that this defendant has for the law in this country as well as the criminal justice system." (Id.) The District Court elaborated:

> He graduated from sentencing—sentencing of probation to small periods of imprisonment to large periods of imprisonment . . . as high as three years in prison. And it—it didn't make any difference with respect to this defendant, he continued his recidivist conduct.
> . . .
> He has eleven prior adult criminal convictions. The Court gets the impression that time and time again, this defendant stood before a judicial officer and said, I'm gonna amend my ways, which is, essentially, what he's saying to this Court.

(Id. at 33-34.) Finally, the District Court explained:

> This most recent scheme that forms the basis of this indictment is as big a scale as I can think, its complicated, it's the type of scheme that's put together and that's engaged in by the most professional of criminals.
>
> Identity theft, fraudulent conduct in opening bank accounts, obtaining money orders under varying dishonest circumstances to engage in funding the ill-gotten gain. Being involved in a conspiracy with others engaging in similar schemes.
>
> Hard-core white-collar criminal conduct, which deserves no break, when the Court is sentencing a man, who comes from a wonderful family, educated, good citizens and has had the opportunity to raise a family on his own in a decent, honest way and instead, engages in criminal conduct.
>
> The conduct in this case—as far as I'm concerned—requires as a matter of basic necessity, a term that exceeds the range that the sentencing guidelines recommends in this case.

(Id. at 40-41.) Accordingly, the District Court sentenced Ifeoluwa to a term of 75 months

depleted from the two PNC accounts.

7

of imprisonment—12 months above the top of the recommended Guidelines range.

## II.

Ifeoluwa argues that his sentence was unreasonable because the amount of loss and his criminal history were already incorporated into the District Court's Guidelines calculation and, therefore, should not have been used to impose a sentence above the recommended range. We are not persuaded.

A criminal defendant has the burden of establishing that his or her sentence is unreasonable. Cooper, 437 F.3d at 330. In determining an appropriate sentence, the sentencing court must consider the factors set forth in 18 U.S.C. § 3553(a), including the recommended Guidelines range.[7] Cooper, 437 F.3d at 329. We must determine whether those factors were reasonably applied to the circumstances of the case. Id. at 330. In

---

[7] The relevant factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

18 U.S.C. § 3553(a).

doing so, we apply a deferential standard of review. Id. "A sentence that falls within the guidelines range is more likely to be reasonable than one outside the guideline range." Id. at 332. A sentence outside of the recommended range is not, however, presumptively unreasonable. United States v. Schweitzer, 454 F.3d 197, 204 (3d Cir. 2006).

In this case, the record unambiguously shows that the District Court fully considered the factors set forth in § 3553(a). The fact that in doing so, the District Court took into account the losses sustained by the victims, as well as Ifeoluwa's recidivist tendencies, in no way rendered its application of the § 3553 factors unreasonable. See United States v. King, 454 F.3d 187, 195 (3d Cir. 2006) (noting that the factors set forth in § 3553(a) "overlap to some degree with the bases for potential Guidelines departures"); United States v. Wallace, 458 F.3d 606, 613 (7th Cir. 2006) (stating that "if Booker means anything at all, it must mean that the court was permitted to give further weight to a factor covered by a specific guidelines adjustment") (internal quotation marks omitted). Rather, both issues were, as the District Court recognized, clearly relevant to "the nature and circumstances of the offense and the history and characteristics of the defendant," "the seriousness of the offense,"and the need for "adequate deterrence." See 18 U.S.C. § 3553(a).

Moreover, these two factors—the losses sustained by the victims and Ifeoluwa's criminal history—were not the only ones that the District Court determined justified a sentence above the recommended Guidelines range. Rather, it also considered the

9

complexity of the scheme, as well as the fact that Ifeoluwa was well-educated and had opportunities to pursue legitimate means of supporting himself and his family. Accordingly, we conclude that Ifeoluwa fails to satisfy his burden of establishing that the sentence imposed by the District Court was unreasonable.

**III.**

The other issue Ifeoluwa raises on appeal is whether the District Court properly denied his request for sentencing credit for 6 months spent in Bucks County Correctional Facility from July 2003 to February 2004, and 4 months spent in the custody of Immigration and Customs Enforcement ("ICE") at York County Prison from February 2004 until his arrest on federal charges in June 2004.[8] We conclude that the denial was entirely proper.

18 U.S.C. § 3585(b) provides:

> A defendant shall be given credit towards the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). In United States v. Wilson, the Supreme Court rejected "the argument that § 3585(b) authorizes a district court to award credit at sentencing." 503 U.S. 329, 332 (1992); United States v. Brann, 990 F.2d 98, 103-04 (3d Cir. 1993) (noting

---

[8] Ifeoluwa is a citizen of Nigeria.

10

that "district courts do not have jurisdiction to grant credit for prior custody").  Rather, the power to grant sentencing credit under § 3585(b) is vested with the Attorney General of the United States, which has delegated that authority to the Bureau of Prisons.  <u>Wilson</u>, 503 U.S. at 334-35.  Thus, the District Court correctly determined that it could not grant Ifeoluwa credit for time served in either state or immigration custody.[9]

## IV.

In sum, we conclude that (1) the above-Guidelines range sentence imposed by the District Court was reasonable and (2) the District Court properly determined that it lacked the authority to grant Ifeoluwa credit for time spent in state and immigration custody.  Accordingly, we will affirm the sentence imposed by the District Court.

---

[9] The District Court did make a factual finding, based on the stipulation of the parties, that the state detention "resulted from exactly the same set of facts" underlying Ifeoluwa's federal conviction and therefore "should result in the credit." (Appellant's Appx. II at 29.)  With respect to the time spent in immigration custody, the District Court concluded that the record was insufficient to make any factual findings on the issue.  Indeed, the only information before the District Court was that upon release from state custody in February 2004, Ifeoluwa was transferred by ICE to York County Prison pursuant to a final order of removal.  (<u>Id.</u>)  The record does not indicate when the order of removal was issued or the circumstances of Ifeoluwa's transfer to York County Prison.