# UNITED STATES OF AMERICA

## v.

# FITZROY CALVIN BRANN, APPELLANT

[990 F.2d 98]

No. 92-7257

United States Court of Appeals
for the Third Circuit

March 30, 1993

TERRY M. HALPERN, ESQ., United States Attorney; ALBERT T. RATLIFF, ESQ. (Argued), Office of United States Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

BRUCE Z. MARSHACK, ESQ. (Argued) (HEADLEY, LAMONT & MARSHACK), Christiansted, St. Croix, V.I., *for appellant*

BEFORE: BECKER, COWEN and ROTH, *Circuit Judges*

## OPINION OF THE COURT

ROTH, *Circuit Judge*

Appellant Fitzroy Calvin Brann appeals a sentence imposed upon him under the United States Sentencing Guidelines (U.S.S.G. or Guidelines) after he pled guilty to one count of Theft Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. § 666. Brann was sentenced to fourteen months imprisonment, three years of supervised release, restitution of $18,000, and a special assessment of $50.

Brann cites three grounds for error in the sentence imposed upon him. First, he claims that the sentencing judge incorrectly applied a two level "abuse of trust" upward adjustment, pursuant to U.S.S.G. § 3B1.3, in a case in which the abuse of trust was already an element of the offense. Second, he contends that, even if such an adjustment were proper, it should not be applied to an employee in a low level position such as he held. Third, he claims that the sentencing judge erred in not crediting the period of Brann's pretrial house arrest in its sentencing calculation.

■ We reject all of Brann's allegations of error for the reasons stated in this opinion. Therefore, we will affirm the district court's judgment of sentence.

I.

The facts of this case are largely uncontested. From August 25, 1986, up until his arrest on March 25, 1991, Brann was employed as a narcotics agent by the Virgin Islands Narcotics Strike Force (NSF). The NSF is a law enforcement agency within the Virgin Islands Department of Law. The NSF received federal funds in excess of $10,000 during the year in which Brann committed the offenses at issue here. When he was hired as a drug agent, Brann had no prior law enforcement experience; nevertheless, he was placed directly into service without prior training and learned while on the job. Brann was one of two agents assigned to St. Croix. During his first eighteen months of service he made numerous arrests and seized many vehicles and thousands of dollars in cash which were forfeited to the Virgin Islands government.

In early 1988, after completing a year and a half as an agent, Brann received his first formal training at the Institute of Police Technology and Management (I.P.T.M.) in St. Augustine, Florida.

276

He was trained for two weeks there in tactical techniques for street survival during drug deals. Subsequently, Brann received additional training by the federal and local authorities.

On or about January 1, 1991, and on or about February 8, 1991, Brann orchestrated two narcotics transactions. He obtained $9,000 for each transaction from the NSF to purchase a half kilogram of cocaine from a purported drug dealer. In order to carry out these "drug busts," Brann needed to obtain approval from his supervisor, Gaylord Sprauve, to work with an individual named Essam M. Suid. Brann arranged a meeting in St. Thomas between Sprauve and Suid. During this interview, Suid told Sprauve that he already had a drug transaction established that he could conduct with Brann. Sprauve authorized Suid to work with Brann. The proposed drug transaction was, however, fictitious. Suid told an F.B.I. Special Agent that Brann had instructed Suid to tell Sprauve that Suid already had a drug deal set up that he could work with Brann despite the fact that this was not true.

The first transaction took place in Frederiksted, St. Croix. Brann instructed Suid to take a package of cocaine from a person with whom he would meet, to count the $9,000 in cash for the benefit of a tape recorder he was wearing, and to keep the money rather than exchange it for the cocaine. Suid did as instructed and returned the money and the alleged cocaine he had received to Brann. A few weeks later, Suid conducted an identical transaction in St. Thomas. Suid again turned the money and the alleged cocaine he had received over to Brann.

Brann delivered the alleged narcotics to the NSF. He kept the money supplied by the NSF for the transactions. The Virgin Islands crime laboratory tested the alleged cocaine and determined that the two quantities showed a cocaine concentration of .004% and .005%. This minuscule amount of cocaine in the mixture would be neither acceptable to drug purchasers nor indicative of any marketable dilution or cutting of the cocaine.

On March 13, 1991, Gaylord Sprauve alerted the F.B.I. of the suspicious nature of the two narcotics transactions conducted by Brann. The F.B.I. subsequently conducted an investigation and Brann was charged with two counts of Theft Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. § 666. On February 28, 1992, Brann pled guilty to Count II in exchange for a dis-

277

missal of Count I. Brann was sentenced on May 6, 1992.[1] His offense level under the Sentencing Guidelines included a two level upward adjustment for an "abuse of trust." During the sentencing hearing Brann challenged the propriety of this upward adjustment for abuse of position of trust.

The United States Probation Office's presentence report computed a total offense level of 11 under the Guidelines: the base offense level for crimes involving fraud or deceit is 6, U.S.S.G. § 2F1.1(a); increased by three levels to reflect an amount of loss of $18,000, U.S.S.C. § 2F1.1(b)(1)(D); increased by two levels for more than minimal planning, U.S.S.G. § 2F1.1(b)(2)(A); increased by two levels for abuse of a position of trust, U.S.S.G. § 3B1.3; and decreased by two levels for acceptance of responsibility, U.S.S.G. § 3E1.1(a). The district court adopted the Probation Office's calculations at the sentencing hearing. Brann's timely appeal followed.

## II.

The District Court of the Virgin Islands had jurisdiction over this case pursuant to 48 U.S.C. § 1612 and Title 4, Virgin Islands Code § 32. We have jurisdiction over this final judgment and commitment order of the district court pursuant to 18 U.S.C. §§ 1291 and 3742.

■ Brann claims that the district court misconstrued and misapplied an adjustment provision of the Guidelines in its application of the § 3B1.3 adjustment in determining the total offense level for a violation of 18 U.S.C. § 666(a)(1)(A)(i), an offense which appellant contends included in its base offense level an abuse of trust. Our review of such a legal issue is de novo. See United States v. Bierley, 922 F.2d 1061, 1064 (3d Cir. 1990); United States v. Georgiadis, 933 F.2d 1219, 1224-25 (3d Cir. 1991). Brann also claims that the district court erred when it found that his position as a narcotic agent was a position of trust. We also treat this question as a legal determination and give it de novo review. See United States v. McMillen, 917 F.2d 773, 775 (3d Cir. 1990) (whether a position is one of trust is best characterized as an inquiry into the "interpretation of a guideline term").

---

[1] The Sentencing Guidlines in effect as of May 6, 1992, the date of Brann's sentencing, are applicable in this opinion. 18 U.S.C. § 3553(a)(4)–(5) (1988); see also United States v. Lieberman, 971 F.2d 989, 991 n.2 (3d Cir. 1992).

## III.

We will first consider whether the sentencing court properly increased Brann's base offense level by two levels under U.S.S.G. § 3B1.3 for abuse of a position of trust when Brann was convicted of violating 18 U.S.C. § 666. Thereafter, we will turn to Brann's argument that the district court improperly found that his position was one of trust.

■ First, Brann contends that the district court improperly applied the Guidelines § 3B1.3 in this case because abuse of a position of trust is an element of the crime of theft charged under 18 U.S.C. § 666 and is already accounted for by the assigned base offense level. U.S.S.G. § 3B1.3 provides in relevant part:

> If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. *This adjustment may not be employed if an abuse of trust . . . is included in the base offense level or specific offense characteristic.*

U.S.S.G. § 3B1.3 (emphasis added). Brann argues that "[i]t is inconceivable that a violation of 18 U.S.C. § 666 could occur absent an abuse of position of trust because "the very nature of the crime of conviction is an abuse of the position of trust." Appellant's Br. at 12.

In analyzing this argument, we must first look at the language of the statute. 18 U.S.C. § 666 provides in pertinent part:

> Whoever, being an agent of an organization, embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies property that is valued at $5,000 or more and is owned by such organization shall be fined under this title, imprisoned not more than 10 years, or both. [The organization must receive in excess of $10,000 of federal assistance in any one year period].

18 U.S.C. § 666 (1992). Brann reasons that according to the statute's own language, the crime is incapable of being committed by a person not in a position of trust because the statute targets public agents who, by definition, occupy a position of trust.

This intuitive proposition that § 666 may not be violated by one other than a "person in a position of trust" because it targets public

agents is, however, eroded by reference to the statute's definition of "agent":

the term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative.

18 U.S.C. § 666(d)(1) (1992). The definition thus includes in the term "agent" an employee of any level from the lowest clerk to the highest administrator. It does not, however, include or require that the employee hold a position of trust. Therefore, we reject Brann's contention that an abuse of trust is ipso facto included in the basic elements of the offense under § 666 on the basis that all public agents occupy a position of trust.

Additionally, as we noted in United States v. Georgiadis, 933 F.2d 1219 (3d Cir. 1991), the Guidelines support our view that an abuse of a position of trust is not necessarily an element of every embezzlement: "This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." U.S.S.G. § 3B1.3, comment. (n.1). As we explained in Georgiadis, "if the Commission meant for the enhancement not to be applied to all embezzlers because abuse of trust is already involved in the crime of embezzlement, they would have no cause to single out 'ordinary bank tellers.'" 933 F.2d at 1225 (citations and internal quotations omitted). See also United States v. McElroy, 910 F.2d 1016, 1027 (2d Cir. 1990) (an abuse of trust is not an element of the crime of misapplication of funds under 18 U.S.C. § 656 and is not included in the base offense level because not all persons potentially liable under § 656 necessarily hold positions of trust).

■ Moreover, in making his argument, Brann appears to be confusing the breach of a duty of trust with the breach of a position of trust. Our recent cases concerning the application of the adjustment for abuse of a *position* of trust have explained the distinction between the breach of the duty and the breach of the position. In Georgiadis, we held that, while embezzlement may be the breach of a *duty* of trust, the breach of a *position* of trust, as such a position is defined in the Guidelines, is not a required element of a violation

of § 656.[2] 933 F.2d at 1225. A defendant may embezzle funds in violation of § 656 without necessarily abusing a position of trust. Id. We recently reaffirmed Georgiadis's holding in United States v. Lieberman, 971 F.2d 989 (3d Cir. 1992).

█ Although Georgiadis and Lieberman specifically involve embezzlement from federally insured banks under 18 U.S.C. § 656, their holdings apply equally to this case. 18 U.S.C. § 666 proscribes the same activity of embezzling. The fact that § 666 prohibits the embezzlement of funds from an organization that receives significant federal funds rather than from a federal bank is not significant. It is the embezzling of the money, not the organization from which it is stolen, that is significant under the provisions of both statutes. In addition, the elements of the offense under both statutes can be committed by a low level employee, such as a bank teller or a clerk operating a cash register.

█ Because, therefore, it is not necessary for the government to prove an abuse of a position of trust (within the Guidelines' meaning) in order to convict under 18 U.S.C. § 666, we reject Brann's claim that an abuse of trust is, for purposes of the Guidelines, included in the specific offense characteristic of 18 U.S.C. § 666. We conclude that an upward adjustment for abuse of a position of trust may in the appropriate case be made under § 3B1.3 in determining the total offense level for a conviction under § 666.

Brann makes a second argument that, even if the two level upward adjustment were applicable under § 666, the district court improperly applied it to him because he was employed "as a low level Strike Force Agent with no supervisory responsibility," Appellant's Br. at 14. According to him, therefore, he could not have abused a position of trust. Brann cites our previous holdings in Georgiadis and McMillen and the Guidelines' comment as support for his claim that an upward adjustment under § 3B1.3 may not be applied "to a low level employee, such as an ordinary bank teller, but only to a person whose high supervisory position facilitated the crime." We find Brann's reading of our Court's precedents unpersuasive.

---

[2] The Guidelines explicate a *position* of trust as follows: "The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons." U.S.S.G. § 3B1.3, comment. (n.1).

In Georgiadis, we stated that "[w]hether a particular embezzler abused a position of trust for purposes of upward adjustment under U.S.S.G. § 3B1.3, requires considerations of matters beyond the elements of embezzlement under 18 U.S.C. § 656." Georgiadis, 933 F.2d at 1225. The Guidelines provide that "[t]he position of trust must have contributed in some substantial way to facilitating and not merely have provided an opportunity that could as easily have been afforded to other persons." U.S.S.G. § 3B1.3, comment. (n.1). The Guidelines further illustrate that "[t]his adjustment applies to persons who abuse their positions of trust . . . to facilitate significantly the commission or concealment of a crime." U.S.S.G. § 3B1.3, comment. (backg'd).

■ In Lieberman, we noted that "the primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." 971 F.2d at 993 (quoting United States v. Hill, 915 F.2d 502, 506 (9th Cir. 1990)). In order to warrant a two level upward departure, Brann must have occupied and abused a position of trust "in a manner that significantly facilitated the commission or concealment of the offense." See United States v. McMillen, 917 F.2d 773, 775 (3d Cir. 1990); U.S.S.G. § 3B1.3.

■ In the present case, there is considerable evidence of how Brann utilized his position as a NSF agent to facilitate the commission and concealment of his offense. It was because of his position as an agent that he was able to set up the phony drug buys without surveillance from other law enforcement officials. It was because of his position that he was twice able to obtain the sum of $9,000 from the NSF simply on his representation that he had set up the buys. It was because of his position that he was able to obtain approval to employ Essam Suid to assist him.

As we stated in Lieberman, the apparent ease with which Brann was able to effect the crime illustrates the nexus between the position of trust which he held and the commission and concealment of the embezzlement. Lieberman, 971 F.2d at 993. We also find instructive cases from the First and Ninth Circuits which hold that the application of this adjustment is proper in cases where a police officer abused his position to facilitate the commission and concealment of a crime. See United States v. Rehal, 940 F.2d 1, 5 (1st Cir. 1991) ("Needless to say, a police officer occupies a position of pub-

lic trust, and the commission of a crime by a police officer constitutes an abuse of that trust" although the fact defendant is a police officer does not in and of itself trigger the application of § 3B1.3); *United States v. Foreman,* 926 F.2d 792, 796 (9th Cir. 1990) ("The public, including fellow law enforcement agents, expect that police officers will not violate the laws they are charged with enforcing").

■ We do not hold that every embezzlement by a law enforcement officer will authorize an upward adjustment under § 3B1.1. It is necessary, under the language of the Guidelines, to determine whether the defendant's position facilitated the commission of the crime or his concealment of it. We conclude under the facts of this case that the district court correctly found that Brann's position contributed substantially to the facilitation of both the commission and concealment of the crime.[3]

■ Lastly, Brann moved at the sentencing hearing for credit for time served under house arrest pending his appearance to enter his plea. For approximately eleven months before his appearance and pursuant to an agreement with the government, Brann was restricted to his home in Georgia under house arrest. The district judge denied the motion for credit. We do not reach the question of whether house arrest can in fact qualify as pretrial detention. The issue of whether there has been proper credit of any prior custody to the term of Brann's sentence is not ripe. In United States v. Wilson, — U.S. —, 112 S.Ct. 1351 (1992), the Supreme Court held that under 18 U.S.C. § 3585(b) (the revised statute giving a defendant convicted of a federal crime the right to be credited for time spent in official detention prior to sentencing) the district courts do not have jurisdiction to grant credit for prior custody. The Attorney General has the power to grant credit for pretrial custody in the first instance. See United States v. Checchini, 967 F.2d 348, 349 (9th Cir. 1992); United States v. Blumberg, 961 F.2d 787, 792 (8th Cir. 1992). Thus, Brann must first exhaust his administrative remedies in this matter by seeking any allowable credit for his pretrial detention from the Attorney General.

---

[3] We have reviewed the district court's determination on significant facilitation under a clearly erroneous standard. United States v. McMillen, 917 F.2d 773, 775 (3rd Cir. 1990).

## IV.

For the foregoing reasons, we will affirm the judgment of sentence of the district court.