NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2858
_____

UNITED STATES OF AMERICA,
Appellee

v.

LEONA BELDINI,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF NEW JERSEY
(Crim. No. 2:09-cr-00637)
District Judge: Honorable Jose L. Linares
_____

Argued June 22, 2011
_____

Before: CHAGARES, JORDAN, and GREENAWAY, JR., Circuit Judges

(Opinion Filed: September 6, 2011)
_____

David W. Fasset
Arseneault, Whipple, Farmer, Fassett & Azzarello
560 Main Street
Chatham, NJ 07928
        *Counsel for Appellant*

Brian J. Neary (argued)
21 Main Street Court Plaza South
Hackensack, NJ 07601
        *Counsel for Appellant*

1

Steven G. Sanders (argued)
Office of United States Attorney
970 Broad Street Room 700
Newark, NJ 07102
    *Counsel for United States of America*

_____

OPINION
_____

GREENAWAY, JR., <u>Circuit Judge</u>.

In 2009, Leona Beldini ("Beldini") was a Deputy Mayor of Jersey City, New Jersey, who reported directly to Jersey City Mayor Jerramiah Healy ("Healy"). At that time, Solomon Dwek ("Dwek"), using the name "David Esenbach," posed as a real estate developer with the ultimate objective of bribing Mayor Healy to expedite his fictitious real estate development. Beldini facilitated the meetings between Dwek and Healy and received Dwek's money through intermediaries.

Beldini's activities led to her indictment on November 19, 2009. She was indicted on six counts: one count of conspiracy to commit extortion; two counts of substantive Hobbs Act violations; and three counts of federal program bribery. After a jury trial, Beldini was convicted of two counts of bribery. She was sentenced to concurrent terms of 36 months of imprisonment for each count.

Beldini now appeals: (1) whether the District Court erred by allegedly failing to instruct the jury that a quid pro quo is required by 18 U.S.C. § 666(a)(1)(b); (2) whether there is sufficient evidence that Beldini is an "agent" of a local government within the

2

meaning of 18 U.S.C. § 666(a)(1)(b) and that campaign contributions are included as "anything of value," within the meaning of 18 U.S.C. § 666(a)(1)(b); and (3) whether the District Court erred by not declaring a mistrial due to alleged prosecutorial misconduct in the rebuttal summation.

The District Court's rulings were not in error. We will affirm.

## I.   BACKGROUND

We write primarily for the benefit of the parties and recount only the essential facts.

In 2009, Beldini was a Deputy Mayor of Jersey City, New Jersey, reporting directly to Jersey City Mayor Healy. Dwek was cooperating with the Federal Bureau of Investigation ("FBI") in a large-scale investigation of government corruption. Dwek used the name "David Esenbach," as he engaged in his role as a cooperator. Regarding the Beldini case, he posed as a real estate developer to ask Edward Cheatam ("Cheatam"), a Hudson County public official, and Jack Shaw ("Shaw"), a political consultant, to facilitate meetings between Dwek and Healy, so that Dwek could bribe Healy to expedite his fictitious real estate development — the Garfield Development ("the Development"). Beldini facilitated meetings between Healy, Dwek, Shaw, and Cheatam; she received money from Dwek; and she broke the money up into smaller increments to conceal the identity of the real contributor.[1]

---

[1] New Jersey law requires a campaign to identify, for contributions exceeding $300, the campaign donor's name, address, occupation, employer, and employer's occupation in the periodic reports that the campaign files with the New Jersey Election Law

On March 13, 2009, Dwek met with Shaw, Beldini, and Healy. Dwek explained his plans for the Development to Healy and Healy inquired whether the area was zoned for the Development. Beldini mentioned that Dwek would have to obtain numerous approvals from various city agencies in order to proceed with the Development. Cheatam stated, "we are ready to do some things . . . with your help and your assistance." (Appellee's Br. at 6.) Dwek said, "[a]pprovals are the key." (Id. at 6.)

After Healy left the meeting, Dwek tried to confirm an agreement with Beldini, and Beldini provided Dwek with assurances of her cooperation and expressed a concern about Dwek's identity being revealed. Specifically, she warned Dwek of the limit for campaign contributions. Dwek also promised Beldini that he would retain her as the exclusive broker to sell units in the Development.

Later that day, Beldini suggested to Shaw that the payments from Dwek should be spread among different campaign and political committees benefitting Healy's campaign. Beldini also referred to a then-upcoming political fundraiser, "Broadway at the Beacon," which was sponsored by the Jersey City Democratic Committee ("JCDC") for Healy's benefit. Beldini was the Executive Producer of the event. Beldini told Shaw that Dwek could funnel the payments several ways. Dwek could "do the Team too, you know . . . and then you can do the, uh, JCDC, they're all going to the same place, but they're all different accounts – Team Healy, Healy for Mayor, and JCDC." (Id. at 8.) Beldini also

Enforcement Commission ("ELEC"). A campaign also must file a "Supplemental Contributor Information" form ("Form C-1") if it receives a donation of $1,200 or more within ten days of an election.

4

asked Shaw to obtain specifications for Dwek's Development, which she would discuss with a high-level Jersey City zoning official.

On March 19, 2009, Dwek met again with Cheatam and Shaw arranging for a $10,000 donation by check, which would then be split up into smaller checks. Shaw also added that Beldini wanted to serve as the broker for the Development.

The next day, Dwek met Cheatam and Shaw again. Dwek gave them each $5,000 to be funneled through Beldini to Healy's campaign. The two checks were broken up into $2,500 increments, with each of the checks written by others to conceal the true donor.

At their next meeting, Dwek asked Beldini what the process was for obtaining relief from existing zoning regulations. Beldini responded that Dwek would need to contact zoning official Tony Lambiasie, who, according to Beldini, "is certainly with the mayor." (Id. at 10.) Dwek also discussed the commission Beldini expected to earn for serving as the listing broker to sell the condominium units in the Development. Later, Dwek asked if Beldini's assistance on issues such as voting would pose a conflict of interest. Beldini stated, "I can definitely help you get through a lot of red tape." (Id. at 11.)

Dwek returned to the subject of funneling payments to Healy and Beldini in exchange for official assistance with the Development, stating that he would donate another $10,000 to Healy as the election approached. Beldini and Dwek agreed that he would donate to Healy through the JCDC and the money would be funneled through Shaw and Cheatam.

5

On March 26, 2009, Cheatam delivered to Beldini two of the four $2,500 straw donor checks used to conceal that Dwek was the source of the $10,000 payment.

On April 1, 2009, Beldini met with Dwek, Cheatam, and Shaw. Beldini confirmed that Healy knew Dwek had funded the purchase of tickets to the "Broadway at the Beacon" event the previous Saturday night and Beldini agreed with Dwek that Healy "appreciate[d] the way [Dwek did] business." (Id. at 13.) Dwek reiterated to Beldini that he would give another $10,000 for the benefit of Healy's campaign prior to the election and another $10,000 after the election. Dwek would, again, funnel these payments through Shaw and Cheatam. When Dwek said, "just make sure . . . with you and the Mayor . . . to help me out, expediting my stuff with the Garfield," Beldini replied, "Absolutely." (Id.)

On April 30, 2009, Beldini met again with Dwek, Healy, Cheatam, and Shaw. Before Healy arrived, Beldini learned that Dwek would give Shaw another $10,000 payment for the benefit of Healy's campaign. To conceal Dwek's involvement, Beldini agreed not to put Dwek's "name on anything." (Id. at 14.) Beldini also allayed Dwek's concern about receiving priority treatment by saying, "You know, one thing I can tell you about Jerramiah Healy, he remembers his friends." (Id.)

After the meeting, Dwek gave Shaw $10,000 in cash, which was then to be converted into four $2,500 political contributions for Healy. Five days later, Shaw called Beldini to confirm receipt of the money. Beldini told Shaw that the money would be funneled to the "Healy for Mayor '09" campaign account.

On May 5, 2009, Cheatam and Shaw secured checks from straw donors for the $10,000 contribution provided by Dwek. After confirming that the checks did not exceed the contribution limit, Beldini received them from Shaw and Cheatam and she deposited them into the campaign account for "Healy for Mayor '09."

On May 7, 2009, Beldini listed the straw donor checks instead of a $10,000 contribution from Dwek. Relying on that information, an accountant for JCDC and Healy for Mayor '09 prepared an inaccurate Form C-1, which Beldini signed. A post-election disclosure form,[2] which Beldini and Healy both signed, incorporated the false information from the Form C-1.

On November 19, 2009, a grand jury returned a six-count Superseding Indictment against Beldini. Count 1 charged a conspiracy to commit extortion under color of official right, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). Counts 2 and 3 charged Beldini with substantive Hobbs Act violations based on the two $10,000 bribes Beldini accepted on March 26, 2009 and May 5, 2009. Counts 4 through 6 charged Beldini with federal program bribery, in violation of 18 U.S.C. § 666(a)(1)(B). In Counts 4 and 5, Beldini was charged for the same two $10,000 bribes as charged in Counts 2 and 3. Count 6 charged Beldini with corruptly agreeing to accept the thousands of dollars in real estate commissions that she would have earned on the Development.

On February 11, 2010, the jury convicted Beldini of Counts 4 and 5, but acquitted her of Counts 1, 2, 3, and 6.

---

[2] This was a "Report of Contributions and Expenditures" ("Form R-1").

Beldini filed a motion for a judgment of acquittal or for a new trial. Beldini argued, first, that Counts 4 and 5 could not be proved because campaign contributions did not constitute "anything of value" under 18 U.S.C. § 666(a)(1)(B). Second, she claimed that the evidence failed to prove that she was an "agent" within the meaning of § 666(d)(1). Third, Beldini claimed that the prosecutor improperly misused consciousness of guilt evidence during rebuttal summation. Fourth, Beldini claimed that the jury instructions for Counts 4 and 5 erroneously omitted the explicit quid pro quo requirement contained in the instructions for Counts 1 through 3.

The District Court denied Beldini's motion. First, the Court found that, as a matter of law, the term "anything of value" encompassed campaign contributions and that the evidence established that Beldini was an agent. The Court found that Beldini had forfeited her objection to the jury instructions on Counts 4 and 5, noting that there was no indication in court transcripts or the District Court's notes "that the defendant at any time objected to the fact that the quid pro quo, McCormick standard was not being charged with regard to the § 666 violations as he did with regard to the Hobbs Act."[3] (App. at 1938:96–97.) The District Court continued, noting that "[t]he statute and the statutory language does not require that the quid pro quo be charged," and that, while evidence of a quid pro quo would be sufficient, it did not seem necessary for those violations. (Id.) According to the District Court, "even though there was no challenge to the instruction, we are now having a post verdict challenge to the jury instructions." (Id. at 1938:97.)

---

[3] McCormick v. United States, 500 U.S. 257 (1991).

The Court held that § 666(a)(1)(B)'s corrupt intent requirement obviated the need for an explicit quid pro quo in cases involving campaign contributions. Finally, the Court found no prosecutorial misconduct regarding the rebuttal summation.

On June 14, 2010, the District Court sentenced Beldini to two concurrent terms of 36 months of imprisonment. The District Court entered final judgment and Beldini timely appealed.

## II.    JURISDICTION and STANDARD OF REVIEW

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

"When reviewing a question of law, or a District Court's interpretation of a statute, we exercise plenary review." United States v. Soto, 539 F.3d 191, 194 (3d Cir. 2008) (citing United States v. Rivera Constr. Co., 863 F.2d 293, 295 n.3 (3d Cir. 1988)). This Court can only review an alleged error that was "not brought to the court's attention" at trial if "appellant demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; [and] (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings. '" United States v. Riley, 621 F.3d 312, 322 (3d Cir. 2010) (quoting United States v. Marcus, --- U.S. ----, 130 S. Ct. 2159, 2164 (2010)) (alteration in original). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson v.

United States, 520 U.S. 461, 467 (1997) (quotation marks and citation omitted); see

Riley, 621 F.3d at 322.

"Any non-contemporaneous objections [to prosecutorial misconduct] are subject

to plain error review." United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003) (citing

Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731–32 (1993)). Because

Beldini's counsel did not object to the alleged prosecutorial misconduct during rebuttal

summation, we will review it for plain error.

In examining a sufficiency of the evidence claim, "[i]t is not for us to weigh the

evidence or to determine the credibility of witnesses." Soto, 539 F.3d at 194 (quoting

United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998)) (internal quotation marks

omitted). "[T]he critical inquiry on review of the sufficiency of the evidence to support a

criminal conviction must be not simply to determine whether the jury was properly

instructed, but to determine whether the record evidence could reasonably support a

finding of guilt beyond a reasonable doubt . . . [T]he relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).

## III.  ANALYSIS

### A. Jury Instructions

Beldini argues that jury instructions for § 666 should have included an explicit and

express quid pro quo requirement. She contends that the § 666 jury instructions were

10

given in error because there was no admonition that the jury could not convict unless it found that Beldini had accepted the campaign contributions "in exchange for" or "in return for" official action. See Appellant's Br. at 34–36. Beldini also asserts that, because the jury instruction used the phrase "intended at least in part to be influenced or rewarded," the instruction was for gratuity instead of bribery.

### i. Preservation

Our standard of review on this issue turns, in part, on whether Beldini preserved this issue by objecting to the jury instructions. See FED. R. CRIM. P. 30(d). Under Rule 30(d), "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Id. A party's failure to object as required by Rule 30(d) "precludes appellate review, except as permitted under Rule 52(b)." Id. We review an alleged error that was "not brought to the court's attention" at trial for plain error under Federal Rule of Criminal Procedure 52(b). Marcus, 130 S. Ct. at 2164; see Riley, 621 F.3d at 321–22.

In United States v. Russell, 134 F.3d 171 (3d Cir. 1998), we held that, where defense counsel "engaged the court and prosecutor in a colloquy regarding an alleged error in the charge, the issue was sufficiently preserved." Id. at 178, 180. "[T]he crux of Rule 30 is that the district court be given notice of potential errors in the jury instructions, not that a party be 'required to adhere to any formalities of language and style to preserve his objection on the record.'" Id. at 178 (citing United States v. O'Neill,

11

116 F.3d 245, 247 (7th Cir. 1997) (internal citations omitted)). "However, an objection must nevertheless be sufficiently precise to allow the trial court to address the concerns raised in the objection." United States v. Jake, 281 F.3d 123, 130 (3d Cir. 2002) (citing FED. R. CRIM. P. 30)). "[C]ounsel is required to draw the court's attention to a specific instruction, or to a problem with an instruction, in order to put the court on notice so that a possible error may be corrected before the jury begins to deliberate." United States v. Davis, 183 F.3d 231, 252 (3d Cir. 1999). "Without a clearly articulated objection, a trial judge is not apprised sufficiently of the contested issue and the need to cure a potential error to avoid a new trial." Government of V.I. v. Knight, 989 F.2d 619, 631 (3d Cir. 1993).

The parties have expressed vastly different views on whether Appellant's objections to the jury instructions, now expressly articulated, were preserved at trial. Beldini's counsel claims the issue is preserved based on the following statement concerning counts involving campaign contributions:

> Counts two, three, four, and five specifically deal with the campaign contributions. That is why I am advancing the notion of the campaign contributions. It is four of six counts, and I think that really locate — to use this word — I am not going to use it — not to give its primacy, I think could fail to focus the jury on that aspect.

(Id. at A1657.) [4]

This minimal allusion to the § 666 Counts during discussion of the Hobbs Act charges did not put the District Court on notice to correct a possible error. Moreover, this

---

[4] Counts 2 and 3 refer to Hobbs Act violations. Counts 4 and 5 refer to violations of 18 U.S.C. § 666.

was the only conceivable reference made to the § 666 Counts during the quid pro quo colloquy. Beldini's attorney did not state that a quid pro quo instruction was necessary for a § 666 charge. Although Beldini's counsel specified the portions of the Hobbs Act charges that were problematic, counsel never referenced any specific § 666 charge or line to which Beldini objected. The District Court was not reasonably put on notice of the objection.

To preserve this issue for our consideration, Beldini would have needed to articulate the specific grounds for including quid pro quo language in § 666 jury instructions in order to put the District Court on notice of the potential problem.

The District Court's indication that it noted Beldini's "objection" does not imply that an objection to the § 666 instruction was preserved. (App. at A1657.) It seems instead that the District Court was merely noting Beldini's objection to not including quid pro quo language in certain Hobbs Act jury instructions, which had been discussed at length.

Unlike the colloquy in Russell, Beldini's reference to Counts 4 and 5 was not "tantamount to an objection." See Russell, 134 F.3d at 180. The colloquy in Russell is distinguishable from the colloquy at issue here. In Russell, we found that "it [was] undeniable that [Russell's counsel's] remarks were sufficient to put the trial court on notice that, at the very least, he did not believe that the charge as given was in compliance with our [precedent]." Id. at 179 n.5. The colloquy in Russell revolved around the same jury instruction as the one Russell challenged on appeal. The colloquy

13

in <u>Beldini</u> revolved around the Hobbs Act jury instructions, not the § 666 jury instructions. Russell's counsel specified the precedent that allegedly required a change in the specific jury instruction being discussed; Beldini's counsel did not do the same for the § 666 instructions.

During a hearing regarding several post-conviction motions on May 24, 2010, The District Court emphasized that there had been no objection to the § 666 instructions prior to the jury retiring.[5] Beldini's counsel gave justifications for not objecting to the absence of a quid pro quo requirement in the §666 jury instruction. (App. at A1924–25:39–42.) When the District Court asked why Beldini's counsel did not request a <u>McCormick</u> instruction before the jury was charged, Beldini's counsel did not argue that he had made

---

[5] The District Court asked Beldini's counsel:

> Why not tell me [that the Hobbs Act and §666 should both receive <u>McCormick</u> instructions] before I instruct the jury then?

> Why did you sit on your hands, never make a request that I charge a <u>McCormick</u> type charge to the jury in connection with the 666?

> You never objected to that issue when it dealt with 666 or suggested that that is something that the jury should consider in the context of the bribery statute. When I specifically asked you about that, your problem was with the title of the bribery statute. . . .

> Isn't it a little bit unfair to the Court to now say, Well, Judge, maybe we should have charged the jury differently, now that I think of it, I made all of my arguments with regard to the Hobbs Act. That's really what I was concerned about, but now that she has been convicted of bribery, now I want to talk about a different jury instruction, which should have been given, which I passed on.

(App. at A1924–25:39–42.)

14

any prior objection to the absence of a <u>McCormick</u> instruction in the § 666 charge or refer to any previous statement preserving the issue.

Because Beldini did not object to the § 666 jury instructions or put the District Court on notice of the issue prior to the jury retiring to deliberate, appellate review of the §666 jury instructions is precluded, except for plain error as permitted under Rule 52(b). <u>See</u> FED. R. CRIM. P. 30(d).

### ii.  Plain Error Analysis

As noted earlier, a defendant must show: " (1) an error; (2) that is plain; (3) which affects substantial rights; and (4) seriously impairs the fairness, integrity, or public reputation of judicial proceedings." <u>United States v. Cesare</u>, 581 F.3d 206, 209 (3d Cir. 2009) (citing <u>Olano</u>, 507 U.S. at 732).

That the error is plain means that it is "clear or obvious, rather than subject to reasonable dispute." <u>Marcus</u>, 130 S. Ct. at 2164; <u>Riley</u>, 621 F.3d at 22 (quoting <u>Marcus</u>, 130 S. Ct. at 2164) (internal quotation marks omitted).  Under Rule 52(b), "[a] deviation from a legal rule is error." <u>See</u> <u>United States v. Retos</u>, 25 F.3d 1220, 1229 (3d Cir. 1994) (internal quotation marks and citation omitted).  Furthermore, "[a]n 'error' is plain, clear, or obvious 'where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified.'" <u>Riley</u>, 621 F.3d at 323–24 (quoting <u>Retos</u>, 25 F.3d at 1230).  That the error "affected the appellant's substantial rights, . . . in the ordinary case means" it "affected the outcome of the district court proceedings." <u>Marcus</u>, 130 S. Ct. at 2164; <u>Riley</u>, 621 F.3d at 321–22.

15

1. Legal Standard

Under 18 U.S.C. § 666(a)(1)(B), whoever

> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
>
> ***
>
> (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more
>
> ***
>
> shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 666(a)(1)(B).

In McCormick, the Supreme Court held that, when an official receives a campaign contribution, a quid pro quo is necessary for conviction under the Hobbs Act.[6] In United States v. Sun-Diamond Growers of California, 526 U.S. 398 (1999), the Court held the same for convictions under 18 U.S.C. § 201(c)(1)(A) (the "illegal gratuity statute").[7] Neither McCormick nor Sun-Diamond determined whether a quid pro quo is required for § 666. The Supreme Court has not addressed whether reasoning analogous to that of McCormick or Sun-Diamond requires a quid pro quo requirement for § 666.

---

[6] In McCormick, the Supreme Court interpreted Congress's intent in using the phrase "under color of official right" in the Hobbs Act to occur for political contributions "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." 500 U.S. at 272–73.

[7] In Sun-Diamond, the Court held that the illegal gratuity statute required a quid pro quo because the § 201(c)(1)(A) prohibition on gratuities given "for or because of any official act performed or to be performed" seemed "pregnant with the requirement that some particular official act be identified and proved." 526 U.S. at 406.

Courts of Appeals are split regarding whether a conviction under § 666 requires proof of a quid pro quo. The Fourth Circuit[8] and, to a lesser extent, the Second Circuit[9] have held that bribery convictions under § 666 require some proof of a quid pro quo. In contrast, the Sixth,[10] Seventh,[11] Eighth,[12] and Eleventh[13] Circuits have held that conviction under § 666 does not require proof of a quid pro quo.

### iii. Discussion

Here, there is no plain error. There is an earnest circuit split on whether § 666 does or does not require proof of a quid pro quo. There is no Supreme Court or Third Circuit precedent on the point. Neither the Supreme Court nor any Court of Appeals has

---

[8] United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir. 1998) (holding that the "corrupt intent" requirement in § 666 requires the government to prove a quid pro quo).
[9] In United States v. Ganim, 510 F.3d 134, 151 (2d Cir. 2007) (holding there was no plain error in a jury instruction that stated that the government must prove a corrupt intent, which "means the intent to engage in some specific quid pro quo").
[10] United States v. Abbey, 560 F.3d 513, 520 (6th Cir. 2009) ("while a 'quid pro quo of money for a specific . . . act is sufficient to violate [18 U.S.C. § 666(a)(1)(B)],' it is 'not necessary'" (quoting United States v. Gee, 432 F.3d 713, 714 (7th Cir. 2005))). The Sixth Circuit agrees with the Second Circuit that "Sun-Diamond's heightened quid pro quo standard is inapplicable to . . . 18 U.S.C. § 666" because Sun-Diamond "concerned a markedly different statute." Id. at 521.
[11] Gee, 432 F.3d at 714 ("A quid pro quo of money for a specific legislative act is sufficient to violate the statute, but it is not necessary.").
[12] United States v. Zimmerman, 509 F.3d 920 (8th Cir. 2007) (holding that the government was not required to prove any quid pro quo for conviction under § 666(a)(1)(B)).
[13] United States v. McNair, 605 F.3d 1152, 1188 (11th Cir. 2010) ("there is no requirement in § 666(a)(1)(b) or (a)(2) that the government allege or prove an intent that a specific payment was solicited, received, or given in exchange for a specific official act, termed a quid pro quo."); see also United States v. Siegelman, 640 F.3d 1159, 1170 (11th Cir. 2011) (noting that "the Supreme Court has not yet considered whether the federal funds bribery, conspiracy or honest services mail fraud statutes require a similar 'explicit promise' [by the official to perform or not perform an official act].").

held that McCormick requires proof of an explicit quid pro quo for a conviction under §

666. Thus, any alleged "error was unclear at the time of trial" and remains unclear on

appeal because the applicable law has not been clarified. See Riley, 621 F.3d at 323–

24 (quoting Retos, 25 F.3d at 1230).

Failing to instruct the jury that an express quid pro quo is required under § 666 is

not a "deviation from a legal rule." Retos, 25 F.3d at 1229. Even if this failure is

deemed an error, it is not a clear or obvious error because the Supreme Court has not held

that an express quid pro quo is required even for Hobbs Act or § 201 convictions.

Beldini has neither shown that failing to require proof of a quid pro quo in § 666

jury instructions is error, nor, if it is error, has she shown that the error is plain, clear, or

obvious.[14] See Marcus, 130 S. Ct. at 2164. Because Beldini has not shown plain error,

we need not inquire whether the alleged error affects substantial rights or seriously

impairs the fairness, integrity, or public reputation of judicial proceedings.

---

[14] In addition to the quid pro quo argument, Beldini has not established plain error due to the jury instruction's use of the word "rewarded." This Court has no precedent establishing that use of the word "rewarded" under § 666 is limited to gratuity and does not refer to bribery. The Model Criminal Jury Instructions for 18 U.S.C. § 666(a)(1)(B) also use the word "rewarded" in the charge for bribery. 3d Cir. Model Crim. Jury Instr. 6.18.666A1B. Even if the word "reward" connotes gratuity and not bribery, the use of that word in the instruction was not plain error because a jury would not have known or assumed that "reward" had that meaning and there was no instruction to that effect. See Ganim, 510 F.3d at 151 (holding that it was not clear or obvious that using the word "reward" was error in § 666 bribery jury instructions). There is no clear or obvious error in using the word "reward" in § 666 jury instructions. Lastly, because Beldini has not shown plain error regarding the use of the word "rewarded," we need not inquire whether that alleged error affects substantial rights or seriously impairs the fairness, integrity, or public reputation of judicial proceedings.

18

**B.     Sufficiency of the Evidence**

Beldini argues that the evidence at trial was deficient in two respects — she lacks authority over local funds and is, thus, not an "agent" for the purposes of § 666.  Beldini also asserts that money given through local campaign contributions is not "anything of value" under § 666.  Beldini posits that these failures regarding sufficiency of the evidence warrant reversal because essential elements of the crime are not present beyond a reasonable doubt.

When applying criminal laws, courts generally "must follow the plain and unambiguous meaning of the statutory language.  '[O]nly the most extraordinary showing of contrary intentions' in the legislative history will justify a departure from that language."  Salinas v. United States, 522 U.S. 52, 57 (1997) (quoting United States v. Albertini, 472 U.S. 675, 680 (1985)) (internal quotation mark omitted) (alteration in Salinas).  A statute is unambiguous if it is "plain to anyone reading the Act" that the statute encompasses the conduct at issue.  Salinas, 522 U.S. at 60 (quoting Gregory v. Ashcroft, 501 U.S. 452, 467 (1991)).  "No rule of construction . . . requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope."  Id. at 59 (quoting United States v. Raynor, 302 U.S. 540, 552 (1938)) (internal quotation marks omitted).  Section 666, however, is extremely broad in scope.  United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007).

19

i.  "Agent"

Beldini contends that § 666 does not apply to her because, as a person who lacks authority over local funds, she is not an "agent."  Beldini argues that <u>Salinas</u> did not determine whether § 666 requires some connection between a bribe and expenditure of federal funds.  The Supreme Court stated in <u>Salinas</u>, however, that § 666's "expansive, unqualified language, both as to the bribes forbidden and the entities covered, does not support the interpretation that federal funds must be affected to violate § 666 (a)(1)(B)." <u>Salinas</u>, 522 U.S. at 56–57.

Under § 666, the term "agent" is defined as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." 18 U.S.C. § 666(d)(1).  This list is not exhaustive.  <u>Vitillo</u>, 490 F.3d at 323.

A person does not have to control federal funds to be considered an "agent" under § 666(d)(1).  <u>Vitillo</u>, 490 F.3d at 323.  Included in the § 666 term "agent" is "an employee of any level from the lowest clerk to the highest administrator."  <u>United States v. Brann</u>, 990 F.2d 98, 101 (3d Cir. 1993).[15]  Moreover, state and local officials can be agents for the purposes of § 666.  <u>Salinas</u>, 522 U.S. at 58.

---

[15] A person does not have to hold a position of trust to be an agent.  <u>Brann</u>, 990 F.2d at 101.  An independent contractor who is authorized to act on behalf of a §666(c) entity or agency is an agent under § 666.  <u>See</u> <u>Vitillo</u>, 490 F.3d at 323.

The Fifth Circuit has held that, for an individual to be an "agent" under § 666, the person must be "authorized to act on behalf of [the agency] with respect to its funds." United States v. Whitfield, 590 F.3d 325, 344 (5th Cir. 2009) (quoting United States v. Phillips, 219 F.3d 404, 411 (5th Cir. 2000)) (internal quotation marks omitted). However, the Fifth Circuit still has agreed that the"[l]ack of a direct connection between funds under ones control and the federal funds in question does not preclude them from being considered agents for the purposes of section 666." Id. at 345.

At the time of the alleged bribery, Beldini was one of three Jersey City deputy mayors. Under Vitillo, Beldini need not control federal funds to be an agent for the purposes of § 666. Despite Beldini's arguments, the current precedent of this Court and the Supreme Court do not require any nexus between conduct prohibited by § 666 and federal funds. See Salinas, 522 U.S. at 56–57. The plain and unambiguous language of the statute would include Beldini as an agent because she was authorized to act on behalf of Healy and Jersey City. Beldini does not argue otherwise in her brief. That the deputy mayor of a city would be an agent under the terms of the statute would likely be plain to anyone reading § 666.

Even if we were to align with the Fifth Circuit in Whitfield and hold that a person is an agent only in so far as the person performs functions involving agency funds, there was still sufficient evidence to consider Beldini an agent because the government put forth evidence at trial that Beldini was performing functions involving agency funds. The government put forth evidence showing that Beldini took the alleged bribes on behalf of

21

Healy, agreed to help with approvals, had influence with Healy, and agreed to cut "red tape" in return for the payments. (Appellee's Br. at 11.)

On this trial record, the evidence could reasonably support a finding that Beldini is an agent for the purposes of § 666. A rational trier of fact could have found this essential element beyond a reasonable doubt.

### ii. "Anything of value"

Beldini argues that money given through local campaign contributions is not "anything of value" under § 666 because it is similar to political loyalty and services. This argument has no merit.

Section 666 prohibits accepting or agreeing to accept "anything of value." § 666(a)(1)(B). Federal funds do not have to be affected for a § 666(a)(1)(B) violation to have occurred. Salinas, 522 U.S. at 56–57. Moreover, the statute does not impose limits on the type of bribe offered. Id. at 57.

The campaign contributions at issue are thousands of dollars. Beldini's proposition that this money is not a thing of value strains credulity. As the Supreme Court stated in Salinas, "anything of value" "encompasses all transfers of personal property or other valuable consideration." Salinas, 522 U.S. at 57. Neither the Supreme Court nor any Court of Appeals has held that money is not "anything of value" under § 666. To hold otherwise would be to "distort[] [§ 666] in order to exclude conduct clearly intended to be within its scope." Id. Record evidence reasonably supports a finding that

22

the campaign contributions were something of value for the purposes of § 666. A rational trier of fact could have found this essential element beyond a reasonable doubt.

## C. Prosecutorial Misconduct

During rebuttal summation, without objection, the government stated that Beldini "agreed not to disclose [Dwek's] name" as the source of the contributions on official forms and, thus, "agree[d] to break the law." (App. at A1855.) The government then asked, "What does that tell you about her understanding of the true nature of this arrangement? . . . [I]f the defendant saw these as simply legitimate political contributions, nothing more, that everything here was on the up and up, then why do we need to hide the source of the payments?" (Id. at 1855–56.)

The District Court instructed the jury that it could consider evidence of Beldini's acts of concealment to infer consciousness of guilt. Beldini does not challenge that instruction. Instead, Beldini contends that the government told the jury, in its rebuttal summation, to convict Beldini based on uncharged election violations. Beldini also argues that the jury's question to the District Court about election law shows that the rebuttal summation encouraged the jury to convict Beldini based on the alleged election violations. Beldini asserts that a media report stating that the jury seemed focused on campaign law violations also shows that the rebuttal summation included prosecutorial misconduct on which the jury based its decision.

i.  Legal Standard

"Prosecutorial misconduct does not always warrant the granting of a mistrial."
United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir. 1995).  If it has been determined

that a prosecutor's remarks were improper, the court will weigh the remarks under a

harmless error standard.  Id. at 1264.  An appellate court should not exercise its

"[s]upervisory power to reverse a conviction . . . when the error to which it is addressed is

harmless since, by definition, the conviction would have been obtained notwithstanding

the asserted error."  United States v. Hasting, 461 U.S. 499, 506 (1983).

To find that a lower court erred in failing to order a mistrial for prosecutorial

misconduct, a court "must first be convinced that the prosecution did in fact misconduct

itself."  United States v. Rivas, 493 F.3d 131, 139 (3d Cir. 2007).  When considering

whether a prosecutor's remarks in summation were improper, "the appropriate inquiry is

whether such remarks, in the context of the entire trial, were sufficiently prejudicial to

violate defendant's due process rights."  United States v. Scarfo, 685 F.2d 842, 849 (3d

Cir. 1982).

ii.  Discussion

When read in context, the portion of the rebuttal summation which Beldini argues

is misconduct is nothing more than a consciousness of guilt argument.  The focus on the

evidence of concealment of Dwek as the source of the contributions is just that.

Encouraging the jury to consider that concealment was not misconduct.  The District

24

Court had already instructed the jury that it could consider such evidence to infer consciousness of guilt.

The government did not encourage the jury to convict Beldini under § 666 based on violations of state election law. The government, instead, seems to reference the election law violations only to posit that the evidence of Beldini's efforts to conceal that Dwek was the source of the payments shows her consciousness of guilt due to her § 666 violations.

The rebuttal summation notwithstanding, there is a considerable amount of evidence showing that Beldini violated § 666, including video and audio recordings. It is unlikely that the jury convicted Beldini because of uncharged election violations referenced in the rebuttal summation when the jury acquitted Beldini on four Counts of the indictment and convicted Beldini for two Counts under § 666. Beldini has put forth no evidence showing that there was prosecutorial misconduct or that the jury made its decision on a legally impermissible basis.

The District Court did not err by declining to declare a mistrial due to prosecutorial misconduct. Even assuming it was an error, however, Beldini has not shown that the error is plain, clear, or obvious. See Marcus, 130 S. Ct. at 2164. Because Beldini has not shown plain error, we need not determine whether the alleged error affects substantial rights or seriously impairs the fairness, integrity, or public reputation of judicial proceedings.

25

## IV. <u>CONCLUSION</u>

For the reasons set forth above, we will affirm the judgment of the District Court.